# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

## APPEAL NO. 22-12792

_____

## UNITED STATES OF AMERICA

**Plaintiff/Appellee,**

**v.**

## WILLIAM BRYAN

**Defendant/Appellant.**

_____

**A DIRECT APPEAL OF A CRIMINAL CASE FROM THE UNITED STATES
DISTRICT COURT FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

_____

_____

## BRIEF OF APPELLANT
_____

**J. Pete Theodocion
507 Walker Street
Atlanta, Georgia 30901
(706) 722-3000
Counsel for Appellant Bryan**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 22-12792** |
| | ) | |
| **WILLIAM BRYAN,** | ) | |
|     **Appellant.** | ) | |

## AMENDED CERTIFICATE OF INTERESTED PERSONS AND COPORATED DISCLOSURE STATEMENT

Pursuant to Local Rule 28-2(b), counsel for appellant, William Bryan, certifies that the following persons may have an interest in the outcome of this case:

1. Arbery, Ahmaud

2. Balbo, Attilio (A.J.)

3. Balbo & Gregg, Attorneys at Law, P.C.

4. Bernstein, Barbara (Bobbi)

5. Bryan, William "Roddie"

6. Cheesebro, Hon. Benjamin W.

7. Copeland, Amy Lee

8. Estes, David H.

9. Flynn, Erin H.

10. Levine, Brant S.

11. Lyons, Tara M.

12. McMichael, Gregory

13. McMichael, Travis

14. Perras, Christopher J.

15. Rouse + Copeland, L.L.C.

16. Steinberg, Jill E.

17. Theodocion, J. Pete

18. Wood, Hon. Lisa G.

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

Respectfully submitted this 3rd day of March, 2023.

/s/ **J. Pete Theodocion**

_____
J. Pete Theodocion
Attorney for Appellant Bryan
Ga. Bar No. 703999
507 Walker Street
Augusta, GA 30901
(706) 722-3000
Theodocion01@comcast.net

## **STATEMENT REGARDING ORAL ARGUMENT**

Counsel for Appellant William Bryan respectfully requests oral argument in this case to enable further elaboration of the issues presented by this appeal.

## <u>TABLE OF CONTENTS</u>

AMENDED CERTIFICATE OF INTERESTED PARTIES          2

STATEMENT REGARDING ORAL ARGUMENT          4

TABLE OF CONTENTS          5

CITATIONS          6

STATEMENT OF ADOPTION          8

STATEMENT OF JURISDICTION          9

STATEMENT OF THE ISSUES          10

STATEMENT OF THE CASE          11

     PROCEEDINGS AND DISPOSITION BELOW          11

     STATEMENT OF THE FACTS          12

     STANDARDS OF REVIEW          16

SUMMARY OF THE ARGUMENT          17

ARGUMENT AND CITATONS OF AUTHORITY          18

CONCLUSION          28

CERTIFICATE OF COMPLIANCE          29

CERTIFICATE OF SERVICE          30

## <u>CITATIONS</u>

<u>Cases</u>                                                            <u>Page</u>

*Jackson v. Virginia*                                                18
443 U.S. 307, 319 (1979)


*Old Chief v. United States*                                         20
519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997)


*United States v. Browne*                                            16
505 F.3d 1229, 1253 (11th Cir. 2007)


*United States v. Crawford*                                          21
66 F. Supp. 3d 1311, 1320 (D. Or. 2014)


*United States v. Diggins*                                           20
No. 218CR00122, 2020 WL 1066979 (D. Me. Mar. 5, 2020)


*United States v. Franklin*                                          21
704 F.2d 1183 (10th Cir. 1983)


*United States v. Magleby*                                           21
241 F.3d 1306, 1318–19 (10th Cir. 2001)


*United States v. Skillman*                                          21
922 F.2d 1370 (9th Cir. 1990)

| **Federal Statutes** | **Page** |
| --- | --- |
| 18 U.S.C. §245 | 8, 11, 18, 24, 26, 28 |
| 18 U.S.C. §1201 | 11, 27, 28 |
| 18 U.S.C. § 3231 | 9 |
| 18 U.S.C. § 3742 | 9 |
| 28 U.S.C. § 1291 | 9 |

| **Federal Rules** | **Page** |
| --- | --- |
| 11th Cir. R 28-1 | 8 |
| Fed. R. App. P. 28 | 8 |
| Fed. R. Crim. P. 29 | 11 |
| Fed. R. Evid. 401 | 11 |
| Fed. R. Evid. 402 | 20 |
| Fed. R. Evid. 403 | 20 |
| Fed R. Evid. 404 | 20 |

## STATEMENT OF ADOPTION

Pursuant to Fed. R. App. P. 28(i) and 11th Cir. R 28-1(f), Appellant Bryan adopts by reference that portion of the brief of Appellant Travis McMichael (Case no. 22-12794) contending that the government did not prove beyond a reasonable doubt that Glynn County, Georgia "provided or administered" the streets of Satilla Shores neighborhood, meaning that insufficient evidence supports the jury's verdict on the 18 U.S.C. §245(b) conviction.

## <u>JURISDICTIONAL STATEMENT</u>

The United States District Court for the Southern District of Georgia, Brunswick Division, had jurisdiction over this case pursuant to 18 U.S.C. § 3231. This Court has jurisdiction over this appeal because the district court entered its final decision and sentence on August 18, 2022 (Doc. 263, amended by Doc. 298) and Bryan timely filed a notice of appeal on August 18, 2022 (Doc. 266). See 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## STATEMENT OF THE ISSUES

1. Was there sufficient evidence for the jury to find beyond a reasonable doubt that William Bryan acted as he did towards Ahmaud Arbery because of Arbery's race and color?

2. Was there sufficient evidence for the jury to find beyond a reasonable doubt that William Bryan attempted to seize and confine Ahmaud Arbery because Arbery was enjoying usage of a public street?

3. Was there sufficient evidence for the jury to find beyond a reasonable doubt that William Bryan attempted to seize and confine Ahmaud Arbery and hold him for a reward and otherwise (for a purpose and benefit)?

## STATEMENT OF THE CASE

### A.    COURSE OF PROCEEDINGS AND DISPOSITION BELOW

Appellant William Bryan was indicted April 28, 2021 in the Southern District of Georgia along with codefendants Travis McMichael and Gregory McMichael. (Doc. 1). Bryan was charged in Counts 2 and 3 of the Indictment, those being Interference with Rights (18 U.S.C. 245(b)(2)(B) and Attempted Kidnapping (18 U.S.C. 1201(a)(1) and (d)). Jury selection for all three defendants began February 7, 2022, and the trial commenced February 14, 2022. (Doc. 242, p.1; Doc. 247, p.1).

At the conclusion of the Government's case, the Defense moved under Fed. R. Crim. P. 29 for a Judgement of Acquittal as to Count 2 of the Indictment, and the motion was denied. (Doc. 251, pp. 1788, 1792). On February 22, 2022 the jury returned guilty verdicts against Bryan on both counts. (Doc. 218). Bryan was sentenced by District Judge Lisa Godbey Wood on August 8, 2022 to a confinement sentence totaling 420 months. (Doc. 263). Bryan is currently in custody of the State of Georgia Department of Corrections serving a state sentence of life in prison on state charges related to this same incident.

**B.    STATEMENT OF FACTS**

**1.  The Incident**

On February 23, 2020 Gregory McMichael observed Ahmaud Arbery, a 25-year-old black male, running in the Satilla Shores neighborhood where McMichael lived in Brunswick, Georgia.  Although he did not know Arbery by name, McMichael recognized Arbery from a surveillance video he had recently been shown by a nearby homeowner. Arbery was seen in that video walking into and through a home under construction in the middle of the night.  Feeling Arbery may have committed a crime on this day, and at least wanting to question the young man, McMichael ran inside his residence and called for his son Travis McMichael (also a codefendant), saying "let's go." (Presentence Report, para. 6-7).

The two McMichaels armed themselves and entered Travis' truck with Travis driving and Greg standing in the truck's bed.  They began to chase of Arbery through the neighborhood, a chase that would lead directly in front of Appellant Bryan's home.  Bryan, a then 50-year-old small engine repairman, was outside doing work on his porch and saw Arbery being chased by a truck he recognized from the neighborhood.   One of the McMichaels yelled for Arbery to stop running, but Arbery continued. Feeling like Arbery may have committed a crime to warrant such a chase,

Bryan got into his truck unarmed and joined in the pursuit of Arbery. Prior to that day, Bryan did not know either of McMichaels and had never communicated with them. (Presentence Report, para. 8-9).

During the chase, Bryan at one point blocked Arbery's path, forcing him briefly off the road. Later in the pursuit, Bryan's truck was directly behind Arbery, but evidence showed he did not accelerate towards him and never tried to strike Arbery with his vehicle. Arbery made contact with Bryan's truck once during the incident, with Arbery leaving a palm print on the side of the truck after making a punching motion at the vehicle. Bryan temporarily lost contact with Arbery, but later approached from the rear as Arbery was finally confronted by the McMichaels. Bryan captured on video Travis McMichael fatally shooting Arbery. Additionally, Bryan filmed a large portion of the earlier pursuit on his cell phone, and later at the scene volunteered all of his footage to law enforcement. (Presentence Report, para. 9-10).

### 2. Evidence of a Racial Motive to Pursue Arbery

The Government introduced evidence from Bryan's past to show his racial animus and specifically that he considered African Americans to be inherently criminal. Years of telephone and internet activity were reviewed and analyzed, as Bryan had voluntarily turned over his cell phone and his

passwords.  To perform its analysis, the Government used Amy Vaughan, an intelligence analyst for the Federal Bureau of Investigation Counterterrorism Division and an expert of impeccable pedigree.  (Doc. 249, p. 8).  From thousands of available data items, posts, texts, etc., the Government presented evidence of race-based motive in two classifications, those being (1) general racial animus against African Americans and (2) association of African Americans with criminality.

### a.  Evidence of General Racial Animus Against African Americans

The Government introduced evidence Bryan did not approve of his daughter dating a black man.  In February 2020, Bryan texted his sister that his daughter "has her a nigger now."  Days later, Bryan joked with his ex-wife that the boyfriend would "fit right in with the monkeys."  Months later, Bryan's ex-wife sent him a screenshot of the couple, and Bryan responded, "Like I said she don't give a fuck about herself why should we" and "I don't see any way anything good can come to her with the life she is leading."

In text message exchanges with friends on or about Martin Luther King Day in 2019 and 2020, Bryan called the holiday "Bootlip Day," described an MLK celebration as a "monkey parade," and complained that he "worked like a nigger today" so "all the niggers can take off."  On

January 1, 2020, Bryan texted with his ex-wife and used the words "nigger" and "boot" to describe African Americans; and on June 5, 2019 Bryan commented that a young woman was "still without the one nigger but probably has another nigger!" (Doc. 249, pp. 254-268).

There was no evidence presented at trial that prior to February 23, 2020 Bryan had ever done harm to an African American or any minority. Indeed, no evidence was presented that Bryan had ever a contentious moment with a black individual throughout his lifetime.

### b.  Evidence Suggesting Bryan Associated African Americans with Criminality

On October 10, 2016, in response to a Facebook post announcing that a friend's stolen bike had been recovered and a suspect had been caught, Bryan commented "What kind of fine upstanding citizen was it?  My money still on bootlip."  In May 2019, a friend texted Bryan that his wife had medical expenses she could not pay, and Bryan responded, "If you were black you would not pay for it!" and recommended that the friend "try and get her on disability like the niggers that don't need it."   (Doc. 249, pp. 79, 81).

**C. <u>STANDARD OF REVIEW</u>**

1.  As to Issue 1, the review on sufficiency is plenary, and the evidence introduced at trial is considered in the light most favorable to the verdict. See, e.g., United States v. Browne, 505 F.3d 1229, 1253 (11th Cir. 2007).

2.  As to Issue 2, the review on sufficiency is plenary, and the evidence introduced at trial is considered in the light most favorable to the verdict.  See, e.g., United States v. Browne, 505 F.3d 1229, 1253 (11th Cir. 2007).

3.  As to Issue 3, the review on sufficiency is plenary, and the evidence introduced at trial is considered in the light most favorable to the verdict.  See, e.g., United States v. Browne, 505 F.3d 1229, 1253 (11th Cir. 2007).

## SUMMARY OF THE ARGUMENT

Evidence that a criminal defendant has previously espoused racist views is the most prejudicial evidence imaginable, and for good reason is almost never allowed in criminal trials. The exception, of course, is where an essential element of the crime charged is that the defendant acted "because of" the race of the victim. It is precisely these cases, therefore, where courts must be the most diligent in protecting against jury verdicts not based upon sufficient evidence to convict. There was no evidence presented that Bryan intended to deprive Arbery of his right to use a public roadway, and none that he acted with conscious intent because of Arbery's race or color. Thus, his conviction for depriving Arbery of civil rights is unsupported by the evidence and should be overturned. Similarly, there was no evidence presented that Bryan acted with any intent to constrain or hold Arbery for personal purpose and benefit as required in a kidnapping prosecution and that conviction is likewise unsupported by sufficient evidence. When explosively prejudicial evidence of racism is introduced – even if properly -  then verdicts not supported by sufficient evidence can be a natural consequence, and Bryan asks this Court to overturn what are two plainly improper and unsupported verdicts.

## ARGUMENT AND CITATION OF AUTHORITY

**1. The government presented insufficient evidence to convict Bryan of Interference with Rights because Bryan was not proved to have acted "because of" Arbery's race.**

The government presented insufficient evidence to convict Bryan of interfering with the civil rights of Ahmaud Arbery. The question is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).

To prove Bryan's guilt under 18 U.S.C. §245, it was required that the government prove, in part, that Bryan acted "because of" Arbery's race and color, and that this event would not have occurred at Arbery not been black. The Government successfully proved that Bryan committed certain acts, and that Arbery was indeed black, but it showed no evidence that Bryan acted in any way towards Arbery "because" of the young man's race.

Acknowledging it was in possession of no evidence Bryan consciously intended to harm Arbery because of his race, the Government repeatedly assured the jury such evidence was not necessary, and that it was Bryan's subconscious decision-making that led to his actions. In opening statements, the Government argued that Bryan "immediately assumed that

the black guy, the one running with nothing in his hands, had to be a criminal and that the people chasing him, whoever they were, had to be the good guys." (Doc. 247, p. 56). The Government freely acknowledged that in his mind Bryan was doing the right thing – aiding in the assistance of capturing a possible criminal - but was nonetheless committing a federal crime due to his joining the pursuit due to a subconscious determination that Arbery was being chased for noble and not ignoble reasons.

On the day in question Bryan did not merely see a black man in his neighborhood running, but saw a man being chased in the middle of the day and being yelled at to "stop." Arbery never called out for help or gave any signs that he was the victim of an unprovoked attack. Bryan had every right to assume this unusual situation was possibly a criminal being pursued by either victims or witnesses. Bryan did not arm himself, and never attempted to strike Arbery with his car or harm him in any way, but only attempted to get close enough to Arbery so that he could capture the young man's face on video to aid in possible identification if needed at a later time.

Over objection, the Government was allowed to introduce evidence of the racial bias of Bryan and his codefendants. Generally, such evidence is strictly forbidden, as evidence of a defendant's character or a trait of

character is not admissible for the purpose of proving action in conformity

therewith per Fed. R. Evid. 404(a). In addition, any evidence may be

excluded if its probative value is substantially outweighed by the danger of

unfair prejudice per Fed. R. Evid. 403. According to Rule 403, "[a]lthough

relevant, evidence may be excluded if its probative value is substantially

outweighed by the danger of unfair prejudice, confusion of the issues, or

misleading the jury, or by considerations of undue delay, waste of time, or

needless presentation of cumulative evidence." "Unfair prejudice," in turn,

means "an undue tendency to suggest decision on an improper basis,

commonly, though not necessarily, an emotional one." Fed .R. Evid. 403,

advisory committee notes; see also Old Chief v. United States, 519 U.S. 172,

180, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) ("The term `unfair prejudice,' as

to a criminal defendant, speaks to the capacity of some concededly relevant

evidence to lure the factfinder into declaring guilt on a ground different from

proof specific to the offense charged.").

While a defendant's past usage of the "n word" and similar racist

tropes would never be admitted in most trials, Bryan acknowledges that in a

prosecution where racial animus is an essential element, such prior language

or viewpoints is relevant and admissible under Fed. R. Evid. 401 and 402.

See, e.g., United States v. Diggins, No. 218CR00122, 2020 WL 1066979, at

*1 (D. Me. Mar. 5, 2020) (finding evidence of racist tattoos was "relevant to determining an essential element of the crime charged—namely, whether [the defendant] acted because of racial animus on the night of the alleged assaults"). Indeed, courts have regularly concluded evidence of racial animus is relevant when a hate crime is being prosecuted and racially motivated hatred is an element of the offense. See United States v. Magleby, 241 F.3d 1306, 1318–19 (10th Cir. 2001) (holding evidence the defendant listened to CD with racist lyrics was relevant to establishing the defendant targeted the victims because of their race); United States v. Skillman, 922 F.2d 1370, 1374 (9th Cir. 1990) (holding the district court properly admitted evidence of defendant's association with skinheads where defendant was charged with a hate crime because it "tended to establish" racial animus and that he may act on his beliefs); United States v. Franklin, 704 F.2d 1183, 1187–88 (10th Cir. 1983) (admitting testimony regarding the defendant's self-identification as a racist and strong dislike of African Americans and Jews and the mixing of black and white races is relevant given the statute requires the government to prove the defendants have acted because of the victim's race); United States v. Crawford, 66 F. Supp. 3d 1311, 1320 (D. Or. 2014) ("Defendant's comments about the mosque, Muslims, jihad, and being a Christian warrior have some tendency to make the fact of religious animus

more or less probable than it would without such evidence."); Diggins, 2020 WL 1066979, at *1 (finding evidence of the defendant's "racially charged tattoos" tends to show the defendant holds racist beliefs, which is relevant to an element of the hate crime for which he was charged).

Notwithstanding the conceded relevance and admissibility of evidence of Bryan's past racist language, the explosiveness of this evidence and its resounding prejudicial effect cannot be ignored. Even if jurors (three of whom were black and one Hispanic) were able to put aside the much uglier prior expressions of racism by his codefendants, they nonetheless were asked to judge Bryan's fate after seeing his own usage of foul and ugly racist terms. Where racial motive is an essential element of crimes charged, there is enormous danger that relevant evidence can nonetheless lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged. It is precisely in cases such as this where defendants face the greatest risk of being convicted despite insufficient evidence of guilt.

Bryan's use of the word "nigger" (on seven occasions), "bootlip" (twice) and "monkey" (twice) over at least a five-year span, while nothing to be proud of, fall far short of evidence from which a jury could determine he acted "because of race" when he joined the pursuit of Ahmad Arbery. Unlike codefendants Gregory and Travis McMichael, Bryan never supported

vigilantism. Unlike Travis McMichael, Defendant never called for violence against African Americans or any minority. The Government presented no evidence Bryan possessed or shared any racist literature, no evidence that he approved of any movements related to White Nationalism or racism of any kind, and no evidence that he had ever been rude, mean or harmful to an African American at any point in his life.

The evidence against Bryan did not present a man who saw the world through a prism of racism. He was not obsessed with African Americans such as his codefendant Travis McMichael. Indeed, his texts and social media showed a man who used the "n word" barely once a year, and who was never known once in his life to be unfriendly, much less hateful, toward a black person. There is simply not sufficient evidence in the record to suggest Bryan would have acted any differently on the day in question had Arbery been white, Hispanic, Asian or other. Every crime committed against an African American is not a hate crime. Every crime committed against an African American by a man who has used racist language in the past is not a hate crime. If the term "because of Arbery's race and color" is to mean anything, it has to require evidence – not mere speculation or conjecture – that the charged conduct occurred, in fact, because of race and color and not ancillary to those factors. Such evidence was not presented

here, and thus the evidence was insufficient to support Bryan's 18 U.S.C. §245 conviction.

**2. The Government presented insufficient evidence to convict Bryan of Interference with Rights of Ahmaud Arbery because Bryan was not proved to have acted "because" Arbery was on a public road.**

The McMichaels initiated and Bryan joined a pursuit of Arbery due to their perception that Arbery had committed a crime. Arbery's running on Satilla Shores Drive was incidental and ancillary to that motivation, and there is no evidence that this event would have not occurred had Arbery chose to run through the various front yards of the homes on that road and not the road itself. The Government has argued that this crime could not have occurred exactly the same had Arbery not been on the roadway, but that is not the same as the crime occurring because of such. At no point did the Government even attempt to suggest that the Defendants were motivated by a desire to prohibit usage of Satilla Shores Drive or any roadway to Arbery.

18 U.S.C. 245 was enacted in 1968 to address the intentional denial of civil rights because of factors such as race. Congress rightfully has made it a federal crime to deny African Americans the right to vote or to use public

facilities because of their race. It has not, however, made any crime committed on a public roadway against a black person a violation of that statute. Under the Government's reading of the law, any crime committed against an African American because of race while that person is using a public road is a deprivation of rights under this statute. This was – in fact – the Government's exact response to Bryan's oral Motion for Directed Verdict of Acquittal made after the close of the Government's case. In response to that motion, counsel for Government asserted "[t]he entire four-minute chase happened on the public streets. It happened because Mr. Arbery was using the public streets is why both the McMichaels started the chase and why Defendant Bryan joined in the chase. Moreover, it could not have happened without to the public streets." (Doc. 251, p. 138).

Although the pursuit of Arbery would not have occurred in exactly the same manner had Arbery chose to run through the front yards and back yards of the homes in Satilla Shores as opposed to the roadways, it would have nonetheless occurred. Unlike the types of civil rights deprivations the statute is plainly designed to address, this was not a case of Bryan seeing a black man exercising a right and wanting to take that right away from him. To the contrary, as the Government repeatedly asserted in the trial, this was a case of Bryan and his codefendants seeing a man they thought had

committed a crime and choosing to pursue him.

Here, Bryan saw Arbery being pursued, assumed Arbery had committed a criminal act, and joined the pursuit for that reason and that reason alone. Bryan never sought to prevent Arbery specifically from enjoying the roads of the Satilla Shores neighborhood, just as he'd never accosted any of the surely numerous African Americans who had made use of those roads in the past. The Government presented no evidence of such intent and in fact argued consistently that Bryan's sole motivation for pursuing Arbery was his subconscious determination that Arbery must have committed a crime. Because no evidence was presented at trial suggesting that Bryan would have responded differently had Arbery been running in the various neighborhood yards as opposed to the roadways, the Government failed to present sufficient evidence to support the 18 U.S.C. §245 conviction.

**3. The Government presented insufficient evidence to convict Bryan of Attempted Kidnapping because no evidence was presented that Bryan attempted to hold Arbery for a reward and otherwise (for a purpose and benefit).**

No evidence was presented at trial that Bryan acted for a personal benefit, but only that he acted because of a belief Arbery had possibly committed a criminal act. A conviction under 18 U.S.C. §1201 requires evidence that Bryan attempted to "seize and confine" Arbery and "hold him for a reward and otherwise (for a purpose and benefit). As the Government repeatedly acknowledged during the trial, Bryan's motivation was his instant determination that if Arbery was being chased as he was by the McMichaels, he must have done something wrong. Bryan assumed Arbery had committed a crime, or at least possibly had, and thus joined the pursuit. The Government went to great lengths to show Bryan's subconscious racism led him to falsely identify Arbery as a criminal, but it never suggested Bryan was acting out of any personal desires and surely not for "a reward and otherwise (for a purpose and benefit)" as required by the statute. As such, the evidence was insufficient to support Bryan's 18 U.S.C. §1201 conviction.

## **CONCLUSION**

The Government did not present evidence sufficient to support Bryan's convictions under 18 U.S.C. 245 and 18 U.S.C. 1201 and thus both convictions should be overturned by this court.

Respectfully submitted this 3rd day of March, 2023.


**/s/ J. Pete Theodocion**

_____

J. Pete Theodocion
Ga. Bar. No. 703999

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day served a true and correct copy of the foregoing BRIEF OF APPELLANT upon all parties by filing the same using the Court's ECF system which will provide copies to all interested persons except Defendant/Appellant.

A copy of the foregoing Brief has also been sent on this day via U.S. Mail to the Defendant/Appellant at following address:

William R. Bryan
GDC ID 1003053319
Valdosta State Prison
3259 Val Tech Road
Valdosta, GA 31602

This 3rd day of March, 2023.


/s/ **J. Pete Theodocion**
_____
J. Pete Theodocion
Ga. Bar No. 703999

## <u>CERTIFICATE OF COMPLIANCE</u>

1. I certify this brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 4636 words.

2. I certify that this brief was uploaded in electronic format to the Court's website pursuant to 11th Cir. R. 25-3 on the 3rd day of March, 2023.

3. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared proportionally spaced typeface using Microsoft Word in fourteen (14) font size and times New Roman type style.

Respectfully submitted this 3rd day of March, 2023.


**/s/ J. Pete Theodocion**

_____
J. Pete Theodocion
Ga. Bar. No. 703999


Law Offices of J. Pete Theodocion
507 Walker Street
Augusta, GA 30901
(706) 722-3000