# No. 22-12792

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT
_____

### UNITED STATES OF AMERICA,

Plaintiff-Appellee,

vs.

### GREGORY McMICHAEL,

Defendant-Appellant.

_____

## ON DIRECT APPEAL FROM THE
## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
_____

## INITIAL BRIEF OF APPELLANT
## GREGORY McMICHAEL
_____

A. J. Balbo, Esq.
Georgia Bar No. 142606
11258 Ford Avenue, Suite 11
Richmond Hill, GA  31324
912-459-1776 – Telephone
912-459-1777 – Facsimile
aj@balbogregg.com

Attorney for Appellant G. McMichael

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | **)** | |
| | **)** | |
| **Appellee,** | **)** | **No. 22-12792** |
| | **)** | |
| **V.** | **)** | |
| | **)** | |
| **GREGORY McMICHAEL,** | **)** | |
| | **)** | |
| **Appellant.** | **)** | |
| _____ | **)** | |

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

COMES NOW GREGORY McMICHAEL, by and through his appellate counsel of record, and files this, his Certificate of Interested Persons and Corporate Disclosure Statement pursuant to 11th Circuit Rule 26.1-1 as follows:

Arbery, Ahmaud

Balbo, Attilio J. (A. J.)

Balbo & Gregg, Attorneys at Law, P.C.

Bernstein, Barbara (Bobbi)

Bryan, William "Roddie"

Cheesbro, Hon. Benjamin W.

**United States v. Gregory McMichael – 22-12792**

Copeland, Amy Lee

J. Pete Theodocion, P.C.

Lyons, Tara M.

McMichael, Gregory

McMichael, Travis

Perras, Christopher J.

Rouse + Copeland, L.L.C.

Steinberg, Jill

Theodocion, J. Pete

Wood, Hon. Lisa G.

No publicly traded company or corporation has an interest in the outcome.

Respectfully submitted this 3rd day of March, 2023.

/s A. J. Balbo
_____
A. J. Balbo
Attorney for Appellant G. McMichael
Ga. Bar No. 142606

P.O. Box 1297
Richmond Hill, Georgia  31324
912-459-1776 – Telephone
912-459-1777 – Facsimile
aj@balbogregg.com

## STATEMENT REGARDING ORAL ARGUMENT

Under the standards enunciated in Fed. R. App. P. 34(a)(2), oral argument is warranted and necessary to the just resolution of this appeal and will significantly enhance the decision-making process.  Several of the issues present matters of first impression to the Court.  Therefore, Appellant Gregory McMichael respectfully requests oral argument in this matter.

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement . . . . i

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Table of Citations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Statement Regarding Adoption of Briefs of Other Parties . . . . . . . . . . . . viii

Table of Record References in Brief . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

Statement of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

Statement of the Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.   Course of Proceedings and Disposition in the Court Below . . 2

      B.   Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      C.   Standards of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

         The Government failed to prove that Gregory
         McMichael acted <u>because</u> of Mr. Arbery's race
         and color . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

The Government failed to prove that Gregory
McMichael acted because of Mr. Arbery's use
of a public facility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

The Government failed to prove that Gregory
McMichael attempted to kidnap Mr. Arbery
for a reward or benefit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

The Government failed to prove that the vehicles
employed during the incident were being used as
instrumentalities of interstate commerce . . . . . . . . . . . . . . . . 21

The Government failed to prove that the streets of
the Satilla Shores subdivision were, in fact, public
streets for purposes of defining them as public facilities . . . . . 23


Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

Certificate of Type Size and Style . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

v

# TABLE OF CITATIONS

## CASES

## United States Supreme Court

Johnson v. United States, 576 U.S. 591 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Burrage v. United States, 571 U.S. 204 (2014) . . . . . . . . . . . . . . . . . . . . . . 11-14, 16

University of Tex. Southwestern Medical Center
 v. Nassar, 570 U.S. 338 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Setser v. United States, 566 U.S. 231 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Begay v. United States, 553 U.S. 137 (2008) . . . . . . . . . . . . . . . . . . . . . . . . 19-20

United States v. Gooch, 291 U.S. 124 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## Circuit Courts of Appeal

United States v. Feldman, 936 F.3d 1288 (11th Cir. 2019) . . . . . . . . . . . . . . . 11-14

United States v. McKinley, 647 Fed. Appx. 957(11th Cir. 2016) . . . . . . . . . 21-22

United States v. Langford, 647 F.3d 1309 (11th Cir. 2011) . . . . . . . . . . . . . . . . 8

United States v. Evans, 476 F.3d 1176 (11th Cir. 2007) . . . . . . . . . . . . . . . . . . 20

United States v. Ballinger, 395 F.3d 11218 (11th Cir. 2005) (en banc) . . . . . . . . 22

United States v. Klopf, 423 F.3d 1228 (11th Cir. 2005) . . . . . . . . . . . . . . . . . . . 8

United States v. Mieres-Borges, 919 F.2d 652 (11th Cir. 1990) . . . . . . . . . . . . 8

United States v. Kelly, 888 F.2d 732 (11th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Small, 988 F.3d 241 (6th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . 20


## STATUTES AND OTHER AUTHORITY

18 U.S.C. § 245(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 16, 19

18 U.S.C. § 924(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 1201(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 19, 21

18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

Fed. R. App. P. 28(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

Fed. R. App. P. 32(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Fed. R. App. P. 34(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Fed. R. Crim. P. 29 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## STATEMENT REGARDING ADOPTION OF
## BRIEFS OF OTHER PARTIES

In accordance with Fed. R. App. P. 28(i), Appellant Gregory McMichael adopts portions of arguments made by Appellant Travis McMichael in his Appellate Brief.  The specific arguments to be adopted are the following:

(1)    Whether the Government sufficiently demonstrated that the streets in the Satilla Shores subdivision are "public streets" and whether those same streets qualify as "public facilities" as defined by 18 U.S.C. § 245, Interference of Rights.

(2)    Whether the Government sufficiently demonstrated that the defendants' trucks were "instrumentalities of interstate commerce" in the committing or in the furtherance of the commission of attempted kidnapping,  as required by 18 U.S.C. § 1201, Kidnapping.

**TABLE OF RECORD REFERENCES IN THE BRIEF**

| Brief Page | Item | Docket No. |
|---|---|---|
| x, 3 | Final Judgment | 264 |
| x | Notice of Appeal | 271 |
| 1, 3 | Motion for Acquittal | 229 |
| 2, 10, 19 | Indictment | 1 |
| 3 | Verdict | 218 |
| 3-4 | Order Denying Motion for Acquittal | 257 |
| 4-7, 14, 16-17 | Transcript | 248 |
| 5, 14-15 | Transcript | 250 |
| 6 | Video of Pursuit | Gov. Ex. 10 |
| 11, 14, 16 | Jury Instructions | 216 |
| 17-19 | Transcript | 251 |
| 20 | Transcript | 249 |
| 22 | Transcript | 251 |

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction over this criminal case pursuant to 18 U.S.C. § 3231 because the Appellant was charged with offenses against the laws of the United States.  This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291, which gives courts of appeal jurisdiction over all final decisions of trial courts of the United States.  Final written judgment was entered against Appellant Gregory McMichael on August 18, 2022. Dkt. 264.  A notice of appeal was timely filed on August 21, 2022, Dkt. 271, within 14 days of the entry of judgment and sentence.

## STATEMENT OF THE ISSUES

The district court erred in denying Appellant Gregory McMichael's Motion for Judgment of Acquittal, Dkt. 229, made pursuant to Rule 29 of the Federal Rules of Criminal Procedure, challenging the following matters:

I.  Whether the Government proved that Gregory McMichael acted <u>because</u> of Mr. Arbery's race and color.

II.  Whether the Government proved that Gregory McMichael acted <u>because</u> of Mr. Arbery's use of a public facility.

III.  Whether the Government proved that Gregory McMichael attempted to kidnap Mr. Arbery for a reward or benefit.

IV.  Whether the Government proved that the vehicles employed during the incident were being used as instrumentalities of interstate commerce.

V.  Whether the Government proved that the alleged incident occurred on a public facility.

## STATEMENT OF THE CASE

### Course of Proceedings and Disposition in the Court Below

Defendant Gregory McMichael[1] was charged in a five-count indictment with interference of rights, kidnapping, and using a firearm in connection with a crime of violence, all of which resulted in the death of Mr. Ahmaud Arbery (hereinafter, "Mr. Arbery"). Dkt. 1. Specifically, the Government charged Defendant Gregory McMichael in Count One with interference of rights, a violation of 18 U.S.C. § 245(b)(2)(B), for allegedly using force and threats of force to intimidate and interfere with Mr. Arbery because he was on a public street and because of his race; Count Three with attempted kidnapping, a violation of 18 U.S.C. § 1201(a), for allegedly attempting to seize or confine Mr. Arbery and hold him for reward or benefit; and Count Five with a firearms offense, a violation of 18 U.S.C. § 924(c), for allegedly carrying, using, or brandishing a firearm in connection with a crime of violence, to-wit: the interference of rights charged in Count One.

After a trial lasting six days, not including voir dire, the jury returned guilty verdicts as to each of the three counts against Defendant Gregory McMichael on

---

[1] Because co-defendant Travis McMichael shares the same surname as his father, Defendant Gregory McMichael's full name will be used throughout this Brief to avoid confusion.

February 22, 2022. Dkt. 218.  The jury also returned guilty verdicts as to all counts pending against the two other co-defendants, Travis McMichael and William "Roddie" Bryan. Id.

On March 8, 2022, Appellant Gregory McMichael timely submitted a Motion for Judgment of Acquittal, pursuant to Rule 29 of the Federal Rules of Criminal Procedure, alleging that the Government failed to prove its case against him as to any count because the evidence was insufficient to sustain a conviction. Dkt. 229. The district court denied Appellant Gregory McMichael's Motion for Judgment of Acquittal on August 4, 2022, ruling that the evidence was "more than sufficient" to support the convictions. Dkt. 257.

On August 8, 2022, the district court sentenced Gregory McMichael to be imprisoned for Life, plus seven years. Dkt. 264.  The sentence consisted of terms of Life as to Count 1 and 240 months as to Count 3, to be served concurrently, plus seven years as to Count 5, to be served consecutively to all other counts. Id.  The

federal sentence was further ordered to be served concurrently with the sentence imposed in Glynn County (Georgia) Superior Court, Docket Number CR2000433.[2]

## Statement of Facts

On February 23, 2020, a Sunday afternoon in the Satilla Shores neighborhood of Brunswick, Georgia, Mr. Arbery, a 25-year-old man, unarmed and on foot, would find himself pursued by Gregory McMichael, his son Travis, and neighbor William "Roddie" Bryan.  Dkt. 248 at 1227-1228.  After a chase lasting several minutes, during which time the McMichaels and Bryan attempted to detain or otherwise prevent Mr. Arbery from leaving the neighborhood, Mr. Arbery would be shot dead, killed by multiple shotgun blasts fired by Travis McMichael. Id.

At the time of the shooting, Gregory McMichael was a recently retired law enforcement officer whose last assignment was as chief investigator for the local district attorney's office, a position he had held for over 20 years. Dkt. 248 at 1232. Prior to that posting, Gregory McMichael had previously worked for the Glynn

---

[2] In state court proceedings based upon the same facts and circumstances found in the instant federal case, Appellant Gregory McMichael and his two co-defendants were found guilty of murder, and that court sentenced each of them to life in prison. Dkt. 257.  As of the drafting of this Appeal, the state transcripts are still pending completion, but it is expected that those convictions and sentences will be appealed by all defendants.

County and Brunswick Police Departments. Id. Despite three decades in law enforcement, no evidence was presented at trial showing that Gregory McMichael had ever been the subject of any formal complaint involving excessive force or racially insensitive conduct directed at suspects, defendants, or co-workers.

During that fateful Sunday afternoon, Gregory McMichael was in the front yard of his residence working on boat cushions when he first observed Mr. Arbery run by his house. Dkt. 248 at 1251. This was not the first time Mr. Arbery had been in the Satilla Shores neighborhood. Id. at 1298-1302. In fact, testimony adduced at trial and confirmed in home security footage showed that Mr. Arbery had trespassed against a home under construction on Satilla Drive on four separate occasions the October, November, December, and February prior to the shooting on February 23, 2020. Dkt. 250 at 1436. Each of those prior visits was captured on video and conducted at night without the permission of the homeowner. Dkt. 248 at 1298-1302. Although his identity was unknown at the time, the same individual was recognized in each video based upon his hairstyle and sleeve tattoos. Dkt. 250 at 1425.

Mr. Arbery's nighttime trespassing was deemed "suspicious" by at least one police officer investigating the intrusions. Dkt. 250 at 1436. This same police officer had shown the home security footage of Mr. Arbery to both Gregory and Travis

5

McMichael just weeks before their fatal encounter. Id. at 1435. While discussing Mr. Arbery's numerous visits to the home under construction and brainstorming ways to identify him, Greg McMichael never uttered any racial epithet about Mr. Arbery or expressed any racial animus. Id. at 1432.

After seeing Mr. Arbery run by his home on February 23, 2020, Gregory McMichael recognized him as the same individual he had seen in the security footage going into the home under construction. Dkt. 248 at 1305. Gregory McMichael also remembered that during all previous intrusions into the home, Mr. Arbery had always departed Satilla Shores before law enforcement could arrive. Dkt. 250 at 1435. Springing into action, Gregory McMichael rushed into his house and retrieved his .357 magnum revolver from his bedroom and called for his son Travis to "Come on, let's go!" Dkt. 248 at 1251. Travis grabbed his 12-gauge Remington shotgun and the two entered Travis' white Ford F150 truck in pursuit of Mr. Arbery. Id. at 1251-1252.

As the McMichaels pursued Mr. Arbery, another neighbor, co-defendant William "Roddie" Bryan, saw the chase and decided to assist the McMichaels. Dkt. 248 at 1255-1257. Over the next several minutes, both the McMichaels and Bryan attempted to follow and cutoff Mr. Arbery's exit from the Satilla Shores

neighborhood. Dkt. 248 1260-1261.   The pursuit ended once the McMichaels stopped their vehicle ahead of Mr. Arbery. Gov. Ex. 10 at 0:01:15-24.   Travis McMichael exited his truck with his shotgun as Mr. Arbery ran alongside the passenger side of the vehicle. Dkt. 248 at 1273-1274.   Travis McMichael moved toward the front of the truck and Mr. Arbery inexplicably turned toward Travis McMichael. Dkt. 248 at 1275; Gov. Ex. 10 at 0:01:26-29.   Travis McMichael fired the shotgun three times, killing Mr. Arbery. Gov. Ex. 10 at 0:01:29-43.

Following the tragic incident, the McMichaels and Bryan remained at the scene of the violent exchange and freely answered questions of responding law enforcement. Dkt. 248 at 1304.   Gregory McMichael further agreed to answer additional questions at the police station. Id. at 1321-1323.

## STANDARDS OF REVIEW

The Eleventh Circuit reviews sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the Government and drawing all reasonable inferences in favor of the jury's verdict. <u>United States v. Langford,</u> 647 F.3d 1309, 1319 (11th Cir. 2011) (citing <u>United States v. Klopf,</u> 423 F.3d 1228, 1236 (11th Cir. 2005)).

"If there is a lack of substantial evidence, viewed in the Government's favor, from which a reasonable factfinder could find guilt beyond a reasonable doubt, the conviction must be reversed." <u>United States v. Mieres-Borges,</u> 919 F.2d 652, 656 (11th Cir. 1990) (citing <u>United States v. Kelly,</u> 888 F.2d 732, 740 (11th Cir. 1989)).

## SUMMARY OF THE ARGUMENT

Even viewed in a light most favorable to the Government, the jury's verdict against Gregory McMichael is not sufficiently supported by the evidence so that a reasonable jury could find guilt beyond a reasonable doubt.

First, as to the Interference of Rights charge in Count I, the Government failed to present sufficient evidence that Gregory McMichael acted <u>because</u> of Mr. Arbery's race and <u>because</u> Mr. Arbery was using a public facility. Mr. Arbery's race and the fact that he was running on a street were not the proverbial "straw that broke the camel's back" and were merely "non-essential contributing factors" of Gregory McMichael's decision to pursue Mr. Arbery, the individual he recognized as the same man he saw on home security footage entering a home under construction, at night and without permission of the owner.

Second, as to the Attempted Kidnapping charge in Count III, the Government failed to prove that the trucks utilized by the defendants were being used as "instrumentalities of interstate commerce." Indeed, the evidence supported the notion that the truck driven by Travis McMichael, in which Gregory McMichael was a passenger, was, at best, used as a nothing more than a makeshift barricade. Additionally, the Government failed to provide sufficient evidence to the jury

supporting a finding that Gregory McMichael attempted to kidnap Mr. Arbery for a "ransom or reward or otherwise," except for a novel and unprecedented contention that feelings of "vigilantism" or the protection of one's neighborhood somehow qualify under the umbrella term of "otherwise."

Third, the Government failed to provide the jury with sufficient evidence with which to conclude that the streets of the Satilla Shores subdivision were, in fact, public streets qualifying as a "public facility." Specifically, the Government failed to overcome the fact adduced at trial that the developer of the Satilla Shores subdivision formally offered the streets for dedication to the Glynn County Board of Commissioners, which unanimously and expressly rejected said offer, never to reconsider the matter formally again.

For these reasons, which are more fully explored herein, as well as in the portions of Appellant Travis McMichael's brief which are formally adopted by Gregory McMichael, the Government failed to provide sufficient evidence with which a reasonable jury could have found guilt beyond a reasonable doubt as to the Counts against him.

## ARGUMENT AND CITATIONS OF AUTHORITY

I.    **The Government failed to prove that Gregory McMichael acted <u>because</u> of Mr. Arbery's race and color.**

To convict him of interfering with Mr. Arbery's rights, the Government needed to prove that Gregory McMichael acted "because of [Mr. Arbery's] race [or] color . . ." 18 U.S.C. § 245(b)(2)(B); Dkt. 1. To satisfy its burden, the Government had to prove that the offense would not have occurred "but-for" the fact that Mr. Arbery was Black. <u>See</u> Doc. 216 at 18; <u>cf.</u> <u>Burrage v. United States,</u> 571 U.S. 204, 211-212 (2014); <u>United States v. Feldman,</u> 936 F.3d 1288, 1311-1312 (11th Cir. 2019).

The Supreme Court has interpreted the word "because" as requiring "but-for" causation. <u>Burrage,</u> 571 U.S. at 212. Additionally, the Court has also equated the phrase "results from" as similarly requiring "but-for causality." <u>Id.</u> Justice Antonin Scalia, who authored the majority opinion in <u>Burrage,</u> explained, "*results from* imposes, in other words, a requirement of actual causality . . . that the harm would not have occurred in the absence of—that is, but for—the defendant's conduct." <u>Id.</u> at 211 (emphasis added) (internal quotation marks omitted) (citing <u>University of Tex. Southwestern Medical Center v. Nassar,</u> 570 U.S. 338, 346-347 (2013)).

11

To illustrate how the "but-for" concept of actual causation applies in statutory interpretation, the Supreme Court offered three hypotheticals. Id. at 211-212; see also United States v. Feldman, 936 F.3d 1288, 1311 (11th Cir. 2019) (discussing and evaluating the three hypotheticals proposed by the Supreme Court). The first example is relatively straightforward: "A shoots B, who is hit and dies." Id. at 211. The Court explained that, in this example, A caused B's death because B would not have died "but for" A's action. Id. Quite simply, had A not shot B, B would have lived.

The Eleventh Circuit noted that the Supreme Court made clear "that 'but-for' causality does not require that a single factor alone produce the particular result." Feldman, 936 F.3d at 1311. In other words, there could be a combination of factors that produce a particular result or action. "The same conclusion follows if the predicate act combines with other factors to produce the result, so long as the other factors alone would not have done so—if so to speak, it was the straw that broke the camel's back." Id. (emphasis in original removed) (quoting Burrage, 571 U.S. at 211).

In this second hypothetical, the Burrage Court offered an example of how there could be multiple "but-for" causes that combine for a particular result. Burrage,

12

571 U.S. at 211. "If poison is administered to a man debilitated by multiple diseases, it is a but-for cause of his death even if those diseases played a part in his demise, so long as, without the incremental effect of the poison, he would have lived." Id.  In other words, "both the poison and the debilitating diseases would each constitute a but-for cause of the man's death . . ." even if each factor, considered alone, would not have led to death. Feldman, 936 F.3d at 1311-1312.

The third hypothetical supplied by the Supreme Court envisioned a baseball game where the visiting team's leadoff batter hit a home run in the first inning and the visiting team emerged victorious 1 to 0. Burrage, 571 U.S. at 211-212. The Court maintained that "it is beside the point that the victory also resulted from a host of other necessary causes, such as skillful pitching, the coach's decision to put the leadoff batter in the lineup, and the league's decision to schedule the game." Id. at 212. By contrast, the Court cautioned that it makes little sense to say that an event was the result of an earlier action if that action **"merely played a nonessential contributing role in producing the event."** Id. (emphasis added). So, if the visiting baseball team won by a score of 5 to 2, rather than 1 to 0 first hypothesized, it would not follow that the initial home run was the but-for cause of the victory. Id. "In this scenario, the leadoff home run played a nonessential role in producing the outcome.

13

It did not '[break] the camel's back.'" Feldman, 936 F.3d at 1312-1313 (quoting Burrage, 571 U.S. at 211).

In the instant case, the trial court instructed the jury that, in order to find Gregory McMichael guilty of Interference of Rights, the Government had to prove that "Mr. Arbery's actual or perceived race or color played a determinative role in a defendant's decision to commit the offense." Dkt. 216 at 18.  For the jury to properly convict Gregory McMichael, therefore, they must have believed, beyond a reasonable doubt, that Mr. Arbery's race was the proverbial straw that broke the camel's back.  Even in a light most favorable to the Government, however, there simply was not sufficient evidence presented to the jury to make such a conclusion. In fact, the overwhelming weight of the evidence points to a different outcome altogether.

Gregory McMichael, a retired investigator with decades of police experience, left his driveway and the boat cushions on which he was laboring to initiate a pursuit of Mr. Arbery, not because Mr. Arbery was Black, but, rather, because he correctly identified Mr. Arbery as the individual he had seen on the home security footage. Dkt. 248 at 1323.  He had seen Mr. Arbery illegally within the nearby house under

14

construction.  Dkt. 250 at 1435.  He knew that Mr. Arbery did not have permission to enter that house but had done so not less than four times. Id.

The fact that Mr. Arbery was Black was merely a characteristic shared with the person seen on the security footage, a fact of no greater import to Gregory McMichael's calculus than Mr. Arbery's biological sex, the shorts he was wearing, his hairstyle, or his tattoos.  Mr. Arbery's race was only relevant because it matched the race of the man on the home security footage.

Along these lines, had Gregory McMichael seen a Black *female* running past his house on that fateful day—someone who did not match the characteristics of the person he had seen on the video footage—he would not have left his driveway.  He would not have enlisted his son's aid to go with him.  He would not have pursued such a person at all.  No one would have died.

In other words, the characteristic of Mr. Arbery's race played a ***"nonessential contributing role"*** in Gregory McMichael's decision to pursue and interact with Mr. Arbery.  The determinative factor in initiating that pursuit—the true straw that broke the camel's back—was and is the inescapable fact that Gregory McMichael correctly recognized Mr. Arbery as the individual from the security footage.  To be clear: Gregory McMichael is not arguing in the context of this Brief that the pursuit and

15

subsequent shooting of Mr. Arbery was legally justified, or that Gregory McMichael and the other defendants are free of all criminal liability for Mr. Arbery's tragic death; indeed, the result of the state prosecution militates strongly against such a conclusion. Nevertheless, Gregory McMichael is arguing in this Appeal that his decision to pursue and interact with Mr. Arbery was not motivated by a racial animus and, therefore, not violative of 18 U.S.C. § 245(b)(2)(B).

II.    **The Government failed to prove that Gregory McMichael acted <u>because</u> of Mr. Arbery's use of a public facility.**

To convict Gregory McMichael of Interference of Rights, the Government also needed to prove that Gregory McMichael "acted because of [Mr.] Arbery's enjoyment of a public facility—in this case, public streets in the Satilla Shores neighborhood of Brunswick, Glynn County, Georgia." Dkt. 216 at 19. The Government needed to show that Gregory McMichael acted "because of" Mr. Arbery's enjoyment of a public facility and such enjoyment "played a determinative role" in the decision to commit the offense. <u>Id.</u>

As discussed above, it makes little sense to argue that an event was the result of an earlier action that "merely played a nonessential contributing role in producing the event." <u>Burrage,</u> 571 U.S. at 211-212. In this particular case, Gregory McMichael initiated his pursuit of Mr. Arbery as he ran down Satilla Drive. Dkt.

248 at 1227-1228.  Mr. Arbery's presence on that street was not the determinative factor in Gregory McMichael's decision to initiate pursuit, however, and a simple hypothetical question illustrates this point quite clearly.  Imagine Gregory McMichael witnessed Mr. Arbery running not on Satilla Drive, but rather on the private yards in the neighborhood—would Gregory McMichael, recognizing Mr. Arbery from the home security footage, not have pursued him merely because he was running on people's lawns?  Again, the question before the jury was not whether Gregory McMichael's actions were morally or legally correct; their question was whether Gregory McMichael's decision to act was determined by Mr. Arbery's decision to enjoy a public facility.

The Government provided <u>no evidence</u> that Defendant Gregory McMichael had ever expressed an opinion that people of color should not be permitted to use public facilities, including the streets of his neighborhood.[3]  In fact, one of the Government's own witnesses testified that Gregory McMichael rented a home to people of color, including African Americans. Dkt. 251 at 1708-1710.  In other

---

[3] Gregory McMichael is adopting the portion of co-defendant Travis McMichael's brief challenging whether the roads in the Satilla Shores subdivision are, in fact, public streets for purposes of 18 U.S.C. § 245(b).  For purposes of this argument, however, Gregory McMichael will assume the streets to be public.

words, Defendant Gregory McMichael opened his *private facilities* to African Americans, which fact fatally undercuts the Government argument that he wanted to deprive Mr. Arbery of his right to run on a public street.  The Government may contend that this same witness also testified that Gregory McMichael referred to a tenant as a "walrus." Id. at 1709.  The witness also stated that Gregory McMichael admitted to turning off the renter's air conditioning when she failed to pay rent in a timely manner, and that her "big fat black ass" would move quickly to pay the rent in response. Id. at 1710.  Certainly these comments paint Gregory McMichael in a negative light, but they cannot obscure the fact that Gregory McMichael rented private facilities to persons of color, including African Americans.

It also should be noted that the Government presented the jury with no evidence that Gregory McMichael uttered the "n-word" or other racial epithets against African Americans, despite presenting copious evidence on this point against the other two defendants.

The Government also failed to supply the jury with any evidence that Defendant Gregory McMichael associated African Americans with criminality.  It is true that the Government supplied the jury with evidence that Gregory McMichael spoke negatively about a deceased civil rights activist, that "'all these [B]lacks are

nothing but trouble; I wish they would all die.'" Dkt. 251 at 1779-1780. Those comments, attributed to Gregory McMichael some five years before the incident are grotesque and indefensible. Nevertheless, this evidence does not indicate that Gregory McMichael acted *because of* Mr. Arbery's race or *because of* his use of a public facility. Surely § 245(b) must require something more than just the identity group of a victim and his mere location.

### III. The Government failed to prove that that Gregory McMichael attempted to kidnap Mr. Arbery for a reward or benefit.

According to both Count Three and its underlying statute, the Government needed to prove beyond a reasonable doubt that Defendant Gregory McMichael attempted to kidnap Mr. Arbery for a "reward and otherwise (for a purpose and benefit)." Dkt. 1; 18 U.S.C. § 1201(a)(1). The statute itself states in pertinent part that its scope is directed at, "Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and **holds for ransom or reward or otherwise** any person . . ." 18 U.S.C. § 1201(a) (emphasis added). When conducting a legal analysis, a court should give meaning to every word in a statute. See Setser v. United States, 566 U.S. 231, 239 (2012). This analysis would also give meaning to the word "otherwise," of course, which tethers itself to the text preceding it. See Begay v.

19

United States, 553 U.S. 137 (2008) (abrogated on other grounds by Johnson v. United States, 576 U.S. 591 (2015)).  Accordingly, the word "otherwise" relates back to the words "ransom or reward," which implies some type of actual, if not pecuniary, benefit.

Interpreted broadly, the Government must show beyond a reasonable doubt that the "defendant acted for any reason which would in any way be of benefit." United States v. Small, 988 F.3d 241, 250 (6th Cir. 2021) (finding "ample evidence that the victim was seized and confined in order to enable the defendants to steal the victim's possessions and escape"); see also Gooch v. United States, 291 U.S. 124, 128 (1936).

The Government failed to present a coherent theory as to what reward or benefit Gregory McMichael could have contemplated receiving for attempting to impede Mr. Arbery's exit from Satilla Shores.  The evidence never demonstrated any intention on the part of Gregory McMichael to hold Mr. Arbery for any ransom or reward or otherwise.  At best, the Government rests its argument on Gregory McMichael's feelings of vigilantism, that helping to identify the person invading the home under construction is its own reward. Dkt. 249 at 1451-1458.  Congress included the language, "ransom or reward or otherwise," in the context of the statute;

20

therefore, it must serve some purpose and should be given meaning, even when interpreted broadly.

**IV.      The Government failed to prove that the vehicles employed during the incident were being used as instrumentalities of interstate commerce.**

The Government also failed to present sufficient evidence that Gregory McMichael utilized an instrumentality of interstate commerce in the offense. Section 1201(a) criminalizes behavior where "the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense."

"Under its commerce power, Congress may permissibly regulate the channels and instrumentalities of interstate commerce, as well as activities having a substantial effect on interstate commerce." United States v. McKinley, 647 Fed. Appx. 957, 961 (11th Cir. 2016) (omitting other citations). "To sustain a conviction under the federal kidnapping statute, there must be sufficient evidence that the defendant kidnapped any person and that he used an instrumentality of interstate commerce" in committing or in furtherance of the commission of the offense. Id. at

962. The Eleventh Circuit has also stated that instrumentalities of interstate commerce are "the people and things themselves moving in commerce, including automobiles, airplanes, boats, and shipment of goods." United States v. Ballinger, 395 F.3d 1218, 1225 (11th Cir. 2005) (en banc). In so holding, the Eleventh Circuit has declined to rule categorically on the "premise that all methods of transportation and communication are per se instrumentalities of interstate commerce even when they are not used in commerce." Id. at 1250.

In the instant case, the Government attempted—more than once—to admit evidence of the manufacture and origin of the trucks utilized by Defendants Travis McMichael and William Bryan. Dkt. 251 at 1747-1748. Eventually, the Government succeeded in offering evidence that the trucks were manufactured outside the State of Georgia. Id. Nevertheless, the Government cannot show that Gregory McMichael utilized a purported instrumentality of interstate commerce—a truck—the way in which Congress foresaw the instrumentality to be used. For example, telephone lines are an instrumentality of interstate commerce; however, if an offender used those same telephone lines not as a means of communication, but rather, as a means of restraint by employing them to tie up a victim, such use would not be consistent with an instrumentality of interstate commerce. In this case, the

Government's theory is that the trucks were used to corral and imprison Mr. Arbery, which is more akin to using the telephone lines as a rope to restrain another. The trucks were simply not utilized in a manner consistent with being an instrumentality of interstate commerce, thereby stripping Count Three of its constitutional underpinning.

V.    **The Government failed to prove that the streets of the Satilla Shores subdivision were, in fact, public streets for purposes of defining them as public facilities.**

As referenced hereinabove, Gregory McMichael adopts and incorporates that portion of Travis McMichael's brief that focuses on whether the streets of the Satilla Shores subdivision are public facilities.

# CONCLUSION

For the reasons discussed herein, Appellant Gregory McMichael respectfully argues that, even in a light most favorable to the jury's verdict, the fact remains that the Government failed to provide sufficient evidence in which a reasonable jury could find guilt beyond a reasonable doubt as to the counts against him. Most crucially, the Government failed to prove that Gregory McMichael acted against Mr. Arbery because of his race and because he was using a public facility.

Therefore, Gregory McMichael respectfully requests that his Appeal be granted and his conviction overturned.

Respectfully Submitted this 3rd day of March, 2023.


/s A. J. Balbo
A. J. Balbo
Ga. Bar. No. 142606
11258 Ford Avenue, Ste. 11
Richmond Hill, GA  31324
912-459-1776 – Telephone
912-459-1777 – Facsimile

Attorney for Appellant G. McMichael

24

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(a)(7)(B), the undersigned counsel certifies that this Brief complies with the required page limitation. Additionally, this Brief also complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) and contains approximately 5,000, excluding those parts exempted by Fed. R. App. P. 32(f).

**CERTIFICATE OF TYPE SIZE AND STYLE**

Counsel for Appellant certifies that the size and style of type used in this brief is 14-point Times New Roman.

## CERTIFICATE OF SERVICE

I hereby certify that I have on this date served opposing counsel with the foregoing Brief of Appellant by filing it on the Eleventh Circuit Court of Appeals' EC/CMF portal.

This 3rd day of March, 2023.

/s A. J. Balbo

A. J. Balbo
Ga. Bar. No. 142606
11258 Ford Avenue, Ste. 11
Richmond Hill, Georgia  31324
912-459-1776 – Telephone
912-459-1777 – Facsimile

Attorney for Appellant G. McMichael