# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

No. 22-12792-D

_____


UNITED STATES OF AMERICA,

Appellee,

v.

TRAVIS MCMICHAEL,

Appellant.

_____

On appeal from the United States District Court
for the Southern District of Georgia

_____

**PETITION FOR REHEARING EN BANC**

_____

Amy Lee Copeland
Georgia Bar No. 186730
Rouse + Copeland LLC
602 Montgomery Street
Savannah, Georgia 31401
(912) 807-5000

Attorney for Appellant
Travis McMichael

## STATEMENT OF COUNSEL

Pursuant to Fed. R. App. P. 40(b)(2)(A) and 11th Cir. R. 40-3(b), I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the precedent of this circuit in *United States v. Ballinger*, 395 F.3d 1218 (11th Cir. 2005), and *Garcia v. Vanguard Car Rental USA, Inc.*, 540 F.3d 1242 (11th Cir. 2008), on the issue of whether an automobile *per se* constitutes an instrumentality of interstate commerce, and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this Court.

Pursuant to Fed. R. App. P. 40(b)(2)(D) and 11th Cir. R. 40-3(b), I express a belief, based on a reasoned and studied professional judgment, that this appeal involves a question of exceptional importance, namely whether the Court should consider Georgia law with respect to the provided or administered requirement of 18 U.S.C. §245 since it is relevant to the decision and to do otherwise would result in the creation of federal common law on a uniquely state issue.

/s/ Amy Lee Copeland
Georgia Bar No. 186730
Attorney of Record for
Appellant Travis McMichael

i

# TABLE OF CONTENTS

STATEMENT OF COUNSEL.............................................................i

TABLE OF CONTENTS ................................................................ii

TABLE OF CITATIONS ................................................................v

STATEMENT OF THE ISSUES MERITING EN BANC
CONSIDERATION.............................................................1

STATEMENT OF THE COURSE OF PROCEEDINGS AND
DISPOSITION OF THE CASE..........................................................1

STATEMENT OF THE FACTS ......................................................3

ARGUMENT AND CITATION OF AUTHORITY...........................4

   1. The Court should decline to adopt a rule that automobiles are
     *per se* instrumentalities of interstate commerce and should
     instead follow a case-by-case approach. The latter approach
     demonstrates that McMichael's driving and parking a truck in
     a residential neighborhood does not render that truck an
     instrumentality of commerce...............................................4

     a. The Supreme Court has set "outer limits" on commerce
       power...........................................................................6

b. This Circuit has considered *Lopez* en banc, and in a prior decision, declined to find that automobiles were *per se* instrumentalities of interstate commerce.................7

c. Relying on *Lopez,* two circuits have found that automobiles *per se* are instrumentalities of interstate commerce so as to support federal jurisdiction under §1201.........................................................................7

d. The Tenth Circuit has signaled that a *per se* rule is not appropriate, which aligns with the views of *Garcia* and dissenting opinions form the Third and Sixth Circuits. ..................................................................13

2. Since there is no federal common law concerning property rights, the Court should consider Georgia law demonstrating that Glynn County did not accept the dedication for public use of neighborhood streets. That law, when coupled with the evidence presented by the government, establishes that Glynn County did not provide or administer the neighborhood streets..................................................................17

CONCLUSION ..................................................................21

CERTIFICATE OF COMPLIANCE AND SERVICE ...................22

# TABLE OF CITATIONS

## **Cases**

*Aquilino v. United States*, 363 U.S. 509 (1960) ......................................17

*Bryan v. Kern & Co.*, 196 Ga. App. 165 (1990) ......................................19

*\*Garcia v. Vanguard Car Rental USA, Inc.,* 540 F.3d 1242 (11th Cir. 2008)................................................................................................i, 9-10

*Hibbs v. City of Riverdale,* 277 Ga. App. 889 (1997) ..............................19

*Kaplan v. City of Sandy Springs*, 286 Ga. 559 (2010) ............................18

*Perez v. United States*, 402 U.S. 146 (1971)...............................................7

*Ross v. Hall Co. Bd. of Commrs.*, 235 Ga. 308 (1974) ............................18

*Rouse v. City of Atlanta*, 353 Ga. App. 542 (2020)............................19-20

*Shreveport Rate Cases*, 234 U.S. 342 (1914) .............................................7

*Southern R. Co. v. United States*, 222 U.S. 90 (1911) ..............................7

*Teague v. City of Canton*, 267 Ga. 679 (1997).........................................19

*United States v. Allen*, 86 F.4th 295 (6th Cir. 2023).................................15

*\*United States v. Ballinger*, 395 F.3d 1218 (11th Cir. 2005(en banc).i, 7-9

*United States v. Bishop*, 66 F.3d 569 (3d Cir. 1995)........................12, 15

*_United States v. Bryan_, 159 F.4th 1274 (11th Cir. 2025)....3, 5, 13, 17-18, 20

*_United States v. Chavarria_, 140 F.4th 1257 (10th Cir. 2025)............13-14

_United States v. Cobb_, 144 F.3d 319 (4th Cir. 1998) ...............................12

_United States v. Griffin_, 585 F. Supp. 2d 1439 (M.D.N.C. 1983)...........17

_United States v. Jenkins_, 909 F. Supp. 2d 758 (E.D. Ky 2012).........15-16

*_United States v. Lopez,_ 514 U.S. 549 (1995) ..................................6-7, 14

_United States v. McHenry_, 97 F.3d 125 (6th Cir. 1996)...............12, 15-16

_United States v. Oliver_, 60 F.3d 547 (9th Cir. 1995)................................13

_United States v. Protho_, 41 F.4th 812 (7th Cir. 2022).........................11-12

_United States v. Robinson_, 62 F.3d 234 (8th Cir. 1995) ..........................13

_United States v. White_, 846 F.2d 678 (11th Cir. 1988) ............................17

_United States v. Windham_, 53 F.4th 1006 (6th Cir. 2022) .................11-12

_Watson v. Clayton Co._, 214 Ga. App. 225 (1994) ....................................18

## Statutes

18 U.S.C. §32 ......................................................................................7

18 U.S.C. §245(b)(2)(B).........................................................................i, 1

18 U.S.C. §659 ......................................................................................7

18 U.S.C. §924(c) ...............................................................................1-2

18 U.S.C. §1201(a)(1), (d) ............................................................ 2, 4, 16

18 U.S.C. §2119 ........................................................................... 12

O.C.G.A. §16-5-41(a) ................................................................... 16

## Rules

11th Cir. R. 40-3(b) ......................................................................... i

Fed. R. App. P. 32(a)(5) ............................................................... 22

Fed. R. App. P. 32(a)(6) ............................................................... 22

Fed. R. App. P. 40(b)(2)(A) ........................................................... i

Fed. R. App. P. 40(b)(2)(C) ........................................................... i

Fed. R. App. P. 40(d)(3)(A) ......................................................... 22

Fed. R. Crim. P. 29(c) .................................................................... 2

## Other

U.S. Constit. Art. 1, §8, cl. 3......................................................... 6

## STATEMENT OF THE ISSUES
## MERITING EN BANC CONSIDERATION

The Court should decline to adopt a rule that automobiles are *per se* instrumentalities of interstate commerce and should instead follow a case-by-case approach. The latter approach demonstrates that McMichael's driving and parking a truck in a residential neighborhood does not render that truck an instrumentality of commerce.

Since there is no federal common law concerning property rights, the Court should consider Georgia law demonstrating that Glynn County did not accept the dedication for public use of neighborhood streets. That law, when coupled with the evidence presented by the government, establishes that Glynn County did not provide or administer the neighborhood streets.

## STATEMENT OF THE COURSE OF PROCEEDINGS
## AND DISPOSITION OF THE CASE

This case arises from the shooting death of Ahmaud Arbery, a Black man, in the Satilla Shores neighborhood of Glynn County, Georgia. A trial jury convicted Travis McMichael, who is white, of interference with rights under 18 U.S.C. §245(b)(2)(B); discharging a firearm during and in relation to the §245 charge, under 18 U.S.C.

1

§924(c); and attempted kidnapping under 18 U.S.C. §1201(a)(1), (d).
(Doc 218)

McMichael filed a timely written motion for judgment of acquittal under Fed. R. Crim. P. 29(c), which the district court denied. (Doc 228, Doc 257) McMichael received a sentence of life on the §245 conviction; a concurrent 20-year sentence on the kidnapping conviction; and a consecutive ten-year sentence on the §924(c) conviction. (Doc 265-Pg 2) The federal sentences ran concurrently to the sentences imposed in the Glynn County Superior Court on related state charges, including false imprisonment.[1] (*Id.*) McMichael timely appealed. (Doc 272)

McMichael challenged on appeal whether the government proved beyond a reasonable doubt that 1) Glynn County "provided or administered" the streets of Satilla Shores so as to support the §245 and §924(c) convictions and 2) he used an instrumentality of interstate

---

[1] McMichael currently is serving life without parole plus 20 years, to run consecutively, in the custody of the Georgia Department of Corrections. *See* GDC Find an Offender, accessible at https://services.gdc.ga.gov/GDC/OffenderQuery/jsp/OffQryForm.jsp?Institution= ; *see also State v. McMichael*, No. CR2000433, Super. Ct. of Glynn County (Jan. 20, 2022).

commerce in committing attempted kidnaping. This panel affirmed on appeal. *United States v. Bryan*, 159 F.4th 1274 (11th Cir. 2025). United States District Judge Victoria Calvert, sitting by designation, dissented from the panel's ruling on the interstate commerce issue. *Id.* at 1299.

## STATEMENT OF FACTS

Satilla Shores subdivision is off Highway 17 in Glynn County, Georgia. (Doc 248-Pg 132) Four streets comprise Satilla Shores: Satilla, Burford, Holmes, and Zellwood.[2] (Doc 250-Pgs 172-73) Ahmaud Arbery, who had been out for a Sunday run from his home less than two miles away, was shot and killed near the intersection of Holmes and Satilla. (*Id.* at 135; Doc 248-Pg 121)

Arbery's death occurred after a short, low-speed pursuit through the neighborhood. Specifically, McMichael pulled out of his driveway on Satilla Drive in a Ford pickup truck and "quickly caught up to Arbery." *See Bryan,* 159 F.4th at 1282. He followed Arbery down Satilla toward Burford Road; backed up Burford when Arbery changed direction; turned on Holmes Road; and parked his truck to block Arbery near the

---

[2] In its post-trial briefing, the government did not contend that Zellwood was a public street. (Doc 233-Pg 5)

intersection of Holmes and Satilla. (Doc 249-Pgs 143-62) Co-defendant Bryan drove a second truck, which he used to try to block Arbery. (Doc 249-Pg 153) This is the conduct underlying the attempted kidnapping charge, for which the government relied only on the trucks to serve as the interstate commerce nexus. (Doc 251-Pgs 112-113)

## ARGUMENT AND CITATION OF AUTHORITY

1. **<u>The Court should decline to adopt a rule that automobiles are *per se* instrumentalities of interstate commerce and should instead follow a case-by-case approach. The latter approach demonstrates that McMichael's driving and parking a truck in a residential neighborhood does not render that truck an instrumentality of commerce.</u>**

McMichael received a 20-year sentence following his conviction for attempted kidnapping under 18 U.S.C.§1201(a)(1), (d). (Doc 265-Pg 2) That statute contains three jurisdictional hooks, including that an used any instrumentality of interstate commerce in committing the offense. 18 U.S.C. §1201(a)(1), (d). The government identified McMichael's truck as the instrumentality supporting the exercise of §1201 jurisdiction against him. (Doc 251-Pgs 112-113) Ford manufactured that truck in Missouri. (Doc 251-Pgs 92-94)

The majority held that "automobiles, like Travis's truck, are *per se* instrumentalities of interstate commerce" and affirmed the attempted kidnapping conviction. *Bryan*, 159 F.4th at 1294-95.

But the dissent asserted that this holding "places our circuit on the wrong side of a developing split by overly broadening federal jurisdiction over automobiles." *Id*. at 1299. It advocated for a case-by-case approach to avoid making "traditionally local criminal conduct" as a matter for federal enforcement and to preserve "the distinction between what is national and what is local in the activities of commerce." *Id*. at 1302. A case-by-case approach in this case would result in the reversal of McMichael's attempted kidnapping conviction since the "use of a truck to drive and park on streets in a residential neighborhood was insufficient to confer [§1201] jurisdiction." *Id*. at 1304.

The Court should rehear this issue en banc, reject the *per se* approach, and reverse McMichael's attempted kidnapping conviction. Supreme Court precedent sets "outer limits" on commerce power, and this Court has questioned (and refused to apply) a *per se* rule in a prior case. While two circuits in §1201 cases, and other circuits in carjacking

cases, employ a *per se* rule, a Tenth Circuit case rejects it and notes the criticism of other dissenting judges. This Court should decline to permit an overreach of federal power.

### a. The Supreme Court has set "outer limits" on commerce power.

Congress may "regulate Commerce . . . among the several states." U.S. Constit. Art. 1, §8, cl. 3. The Commerce Clause permits Congress to legislate "three broad categories of activity":

1. Congress may "regulate the use of the channels of interstate commerce" ("*Lopez* 1");

2. Congress may "regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities" ("*Lopez* 2"); and

3. Congress may "regulate those activities having a substantial relation to interstate commerce" ("*Lopez* 3").

*United States v. Lopez*, 514 U.S. 549, 558-59 (1995).

This is a *Lopez* 2 case since the government premises jurisdiction on McMichael's use of a truck. In announcing this category, the Supreme Court gave three examples of appropriate power to "regulate and protect" instrumentalities: the Interstate Commerce Commission's establishment of interstate rates for railroad carriers, *see Shreveport*

6

*Rate Cases*, 234 U.S. 342 (1914); the application of the Safety-Appliance Acts to three cars hauled by a railroad and moving solely in intrastate traffic, *see Southern R. Co. v. United States*, 222 U.S. 20 (1911); and statutes protecting instrumentalities of, and persons and things in, interstate commerce, like 18 U.S.C. §32's prohibition on destruction of aircrafts and 18 U.S.C. §659's prohibition on thefts from interstate shipments, *see Perez v. United States*, 402 U.S. 146, 150 (1971). *Lopez*, 514 U.S. at 558.

Commerce power "is subject to outer limits." *Id.* at 557. It must respect "our dual system of government and may not be extended so as to embrace effects upon interstate commerce so indirect and remote that to embrace them, in view of our complex society, would effectually obliterate the distinction between what is national and what is local and create a completely centralized government." *Id.* at 557-58.

### b. This Circuit has considered *Lopez* en banc, and in a prior decision, declined to find that automobiles were *per se* instrumentalities of interstate commerce.

In *United States v. Ballinger*, 395 F.3d 1218, 1227 (11th Cir. 2005)(en banc), this Court addressed whether the Commerce Clause "permits Congress [under *Lopez* 1 and 2] to proscribe the conduct of an

7

arsonist who travels by car on the interstate highways through four states, apparently for now other purpose than to burn [eleven] churches to the ground." The Court concluded that that Congress acted in the bounds of its commerce power in enacting this statute

> to prevent conduct like Ballinger's, which entailed weeks of travel in a van (an instrumentality of commerce) along interstate highways (a channel of commerce) and at least six separate interstate border crossings, all for the specific purpose of spreading the evil of church burning through four different states.

*Id*. at 1228.

*Ballinger* defined the "[i]nstrumentalities of interstate commerce" as "the people and things themselves *moving* in commerce, including automobiles, airplanes, boats, and shipments of goods." *Id*. at 1226 (emphasis added). Congressional commerce power over these instrumentalities "[p]lainly" encompasses the ability to proscribe their use for harmful purposes, "even if the targeted harm itself occurs outside the flow of commerce and is purely local in nature." *Id*. Thus, "[a]n act that promotes harm, not the harm itself, is all that must occur in commerce to permit congressional regulation." *Id*.; *see also* 18 U.S.C. §247(b)(requiring as jurisdictional hook that "offense is in or affects interstate or foreign commerce").

Despite Ballinger's "border crossings," three judges dissented. One dissent stressed that instrumentalities were "those 'persons or things' that *travel* in interstate commerce," and along with channels, they "encompassed the concept of movement of commerce across state lines. . . ." *Id.* at 1253 (Hill, J., dissenting)(emphasis in original). This dissent decried the majority's

> . . . collapsing the three *Lopez* categories of permissible regulation of commerce into one, all-purpose category that permits regulation of even purely local *non-economic* activities – such as violent crime – if someone or something associated with the activity moves in the channels or utilizes the instrumentalities of interstate commerce prior to the activity. . . .

*Id.* at 1257.

After *Ballinger*, a panel of this Court analyzed *Lopez* 2 in the context of the Graves Amendment, "a federal tort reform statute which purports to shield rental car companies from certain vicarious liability suits." *Garcia v. Vanguard Car Rental USA, Inc.*, 540 F.3d 1242, 1244 (11th Cir. 2008). *Garcia* acknowledged that it would be an "easy case" if the Court simply deemed automobiles as instrumentalities of interstate commerce despite their use. *Id.* at 1249. Indeed, some cases reached that finding regardless of whether a car crossed state lines or was engaged in interstate commerce. *Id.* But *Ballenger* "arguably suggests,

9

without explicitly stating, that persons and things moving in interstate commerce is the full extent of the instrumentalities category." *Id*. And "sensible authority" counseled that "'instrumentalities of commerce' refer only to the 'ingredients of interstate commerce itself.'" *Id*. at 1250.

*Garcia* declined to construe all automobiles as *per se* instrumentalities because of the "dubious implications" of such a rule. *Id*. A *per se* rule would give Congress plenary authority over the rental car market and many aspects of automobile use that had always been quintessentially state law matters, like traffic rules and licensing drivers. *Id*. The Court expressed "doubts about an interpretation which produces these results, which makes us suspect the premise that all methods of transportation and communication are per se instrumentalities of commerce even when they are not used in interstate commerce." *Id. Garcia* upheld the Graves Amendment under *Lopez* 3, finding that the aggregate effects of the rental car industry substantially affected interstate commerce. *Id*. at 1250-52.

The majority opinion here never addresses *Garcia*. Rental car companies challenging a tort reform statute thus received more favorable consideration under *Lopez* 2 than a criminal defendant.

10

Instead of grappling with this Court's precedent, the majority opinion looks to persuasive authority in other circuits. McMichael discusses that authority below, followed by a discussion of a recent Tenth Circuit case that supports the dissent's position as well as the views of dissenting judges in other circuits.

### c. Relying on *Lopez,* two circuits have found that automobiles *per se* are instrumentalities of interstate commerce so as to support federal jurisdiction under §1201.

The Sixth and Seventh Circuits have found that automobiles are *per se* instrumentalities of interstate commerce that supports federal jurisdiction under §1201. *See United States v. Protho*, 41 F.4th 812, 828 (7th Cir. 2022)(rejecting defense argument to view automobiles "individually – rather than a class – when deciding their instrumentality status" and finding that commerce power depended on the "*nature*" of the instrumentality rather than "the particular use"); *United States v. Windham*, 53 F.4th 1006, 1011-12 (6th Cir. 2022)(stating that that Circuit had "held repeatedly and unambiguously that cars and phones are instrumentalities of interstate commerce" and noting that the Commerce Clause "contemplates congressional efforts to keep the channels of interstate commerce free from immoral and injurious uses").

11

Neither *Protho* nor *Windham* involved jurisdiction premised solely on intrastate, non-commercial travel by an automobile. Protho, for instance, drove his automobile interstate to the site of the kidnapping, crossed state lines to conduct a drug deal on the day of the kidnapping, and regularly drove his car across state lines to go to work. *Protho*, 41 F.4th at 828. Windham pleaded guilty to using phone a car *and* a cell phone to commit the kidnapping. *Windham*, 53 F.4th at 1009.

In reaching their decision, *Protho* and *Windham* relied on cases that found that automobiles were *per se* instrumentalities of interstate commerce under the carjacking statute, 18 U.S.C. §2119, which contains a jurisdiction requirement that a motor vehicle was "transported, shipped, or received interstate commerce." *E.g., United States v. Bishop*, 66 F.3d 569, 590 (3d Cir. 1995)(holding that "motor vehicles are instrumentalities of interstate commerce" that could be regulated even if the wrongful conduct occurred solely intrastate); *United States v. Cobb*, 144 F.3d 319, 322 (4th Cir. 1998)(finding that "[c]ars, like trains and aircraft, are both inherently mobile and indispensable to the interstate movement of persons and goods"); *United States v. McHenry*, 97 F.3d 125, 127 (6th Cir. 1996)(finding "once

12

we determine that congressional action has been directed toward regulating or protecting an 'instrumentality' of interstate commerce – e.g., cars, trains, airplanes, ships – that is the end of the Category Two inquiry"); *United States v. Robinson*, 62 F.3d 234, 237 (8th Cir. 1995)(finding §2119 a valid exercise of commerce power since due to jurisdictional hook and Congress's citation of a "direct link between carjacking and negative effects on interstate commerce"); *United States v. Oliver*, 60 F.3d 547, 550 (9th Cir. 1995)(stating "cars are themselves instrumentalities of commerce, which Congress may protect").

### d. The Tenth Circuit has signaled that a *per se* rule is not appropriate, which aligns with the views of *Garcia* and dissenting opinions from the Third and Sixth Circuits.

A few months before the opinion in this case, the Tenth Circuit decided *United States v. Chavarria*, 140 F.4th 1257 (10th Cir. 2025), a §1201 case. As the majority notes, *Chavarria* rejected the notion that a "motor vehicle" was a *per se* instrumentality of commerce. *Bryan*, 159 F.4th at 1296 & n. 17; *Chavarria*, 140 F.4th at 1269. *Chavarria* described this term as "undefined [and] generic," which had the potential to

subject the "entire universe of motor vehicles . . . to federal regulation." *Chavarria*, 140 F.4th at 1269.[3]

*Chavarria* signaled its disagreement with a *per se* rule due to its overbreadth. *Id*. at 1264. To represent proper use of commerce power, an instrumentality "must actually serve the 'end' of interstate commerce," since "'[c]ommerce is the wellspring from which Congress's constitutional authority arises – not something's status as an instrumentality." *Id*. For instance, "transporting an abductee in a bus may be sufficient, while merely imprisoning him in the back of a decommissioned semi may not be." *Id*. at 1264 & n. 15. Commerce power has outer limits. *Id*. at 1267, *citing Lopez*, 514 U.S. at 556-57. Absent an instrumentality's serving as a "means to the end of *commerce*," "prosecution must be left to the states" to honor "our constitutional order." *Id*. at 1268.

*Chavarria* follows a rich vein of contrary views and dissent about the overreach of federal jurisdiction under a *per se* rule. In this Circuit, *Ballinger* "arguably suggests" that persons and things moving in commerce is the breadth of instrumentality power, and despite clear

---

[3] McMichael's indictment referred to "trucks." (Doc 1-Pg 4)

14

interstate movement there, three judges expressed concerns about overbreadth in *Ballinger*. *Garcia* declined to impose a *per se* rule.

Outside of the circuit, a Third Circuit dissent believed that rule "simply too broad," which would allow Congress to insert a "meaningless interstate commerce provision" into any law and "convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States." *Bishop*, 66 F.3d at 596 (Becker, J., dissenting). Judge Becker would limit regulation of instrumentalities to those "actually engaged in interstate commerce, or objects such as railcars or railway bridges, which are integrally related to an interstate commerce network." *Id*. at 597-98.

Sixth Circuit judges have expressed their concerns, too. A dissent rejected a proposition that automobiles' "*inherent potential* to affect commerce" rendered them instrumentalities. *McHenry*, 97 F.3d at 132 (Batchelder, J., dissenting)(emphasis in original); *see also United States v. Allen*, 86 F.4th 295, 310 (6th Cir. 2023)(Murphy, J., concurring) (acknowledging circuit precedent and stating that Judges Becker and Batchelder had "expressed many of [his] reservations in a related context"); *cf. United States v. Jenkins*, 909 F. Supp. 2d 758, 767 (E.D.

15

Ky. 2012)(noting *per se* precedent but observing that the "intrastate use of a truck to affect a violent act is seemingly attenuated from interstate commerce"). Although many things and most people have the inherent potential to affect commerce, that alone would not permit congressional regulation. *McHenry*, 97 F.3d at 132. The logical end of this view would allow Congress to regulate nearly everything. *Id.*

McMichael's attempted kidnapping conviction involved his driving and parking a truck in a neighborhood. The actions were both intrastate and non-commercial. They did not involve movement in interstate commerce. If *Garcia* found a *per se* rule problematic in a challenge to a tort reform statute, it is far more problematic in a criminal case where a kidnapping conviction resulted in a 20-year concurrent sentence. This type of activity is one that the state could – and should – control,[4] lest traditionally local criminal conduct becomes subject to federal prosecution and obliterates the distinction between national and local activities of commerce.

---

[4] A state jury convicted McMichael of false imprisonment, which occurs when one "arrests, confines, or detains [another] person without legal authority." O.C.G.A. §16-5-41(a); *compare* 18 U.S.C. §1201(a)(applying to one who "seizes [or] confines. . ." another).

16

**2. Since there is no federal common law concerning property rights, the Court should consider Georgia law demonstrating that Glynn County did not accept the dedication for public use of neighborhood streets. That law, when coupled with the evidence presented by the government, establishes that Glynn County did not provide or administer the neighborhood streets.**

The panel found that it need not consider state law on a county's obligation toward roads to determine whether it "provided or administered" that facility under §245. *Bryan,* 159 F.4th at 1292. Federal courts defer to state law on property issues given the lack of federal common law. *E.g., Aquilino v. United States*, 363 U.S. 509, 513 & n. 3 (1960)(noting "the long-established role that the States have played in creating property interests"). Interference-with-rights cases look to the local authority's oversight and procedures. *See United States v. Griffin,* 585 F.Supp.2d 1439, 1442 (M.D.N.C. 1983)(considering local ordinances); *see also United States v. White*, 846 F.2d 678, 695 (11th Cir. 1988)(considering lack of city requirement for parade permit). Under Georgia law, the county did not provide or administer Satilla Shores's streets, so insufficient evidence supports McMichael's §247 and §924(c) convictions.

The developer paved the subdivision's roads and offered to dedicate those roads to the public, but Glynn County accepted the dedication only with respect to the right-of-way. (Doc 250-Pgs 153, 159-60, GX103) The county *expressly rejected* the "dedications [of the neighborhood] streets." (Doc 250-Pg 167; DX13) Dedication does not mean that the county owns or has title to the streets, as the opinion states. *Bryan*, 159 F.4th at 1292. Instead, it sets aside land for public use, "but it must be accepted by the county before it becomes a county road." *Ross v. Hall Co. Bd. of Commrs.*, 235 Ga. 309, 310 (1975). A public street requires both dedication and acceptance. *Watson v. Clayton Co.*, 214 Ga. App. 225 (1994).

It is difficult to show that a county impliedly accepts an offer of dedication, especially following an express rejection. An acceptance may be shown by the county's treating a road as its own, but any such act must "support an inference that the county exercised dominion and control. . . ." *Kaplan v. City of Sandy Springs*, 286 Ga. 559, 560-61 (2010); *see also Ross*, 235 Ga. at 311-12 (enough if county approves grading, "bases" road to prepare for blacktopping by developer, supervises rebuilding of blacktop after competition, and patches road

several times – all with the Commission's knowledge); *Bryan v. Kern & Co.*, 196 Ga. App. 165, 167 (1990)(enough if county inspects road 50-60 times and installs traffic signs); *Hibbs v. City of Riverdale*, 277 Ga. App. 889 (1997)(not enough for city to demand code compliance, perform regular inspections, or have a public works employee say he would make a drainage problem his "number one priority"); *Rouse v. City of Atlanta*, 353 Ga. App. 542, 545 (2020)(not enough to inspect sewer pipe or include pipe on system map, especially where no evidence showed whether city or property owner added cementitious lining to pipe).

While the government presented 101 service tickets from the Department of Public Works ("DPW"), most went to right-of-way and drainage issues, which the county expressed accepted via dedication.[5] (Doc 250-Pgs 147-51, GX105) Although DPW classified 14 as road-related, only *two* pertained to work on the three relevant streets: one asked for a street sweeper, and another asked the county to contact a garbage company to clean up a hydraulic spill. (GX105-94, 105-057) The government introduced a county roads list from the year *after* this

---

[5] A county may accept part of a dedication and reject part. *Teague v. City of Canton*, 267 Ga. 679, 680-81 (1997)(county accepted dedication of streets, rejected dedication of water and sewer systems).

incident (Doc 250-Pgs 143-45, GX104), but being on a list or map is not enough to show that a county has accepted dedication of the road under *Rouse*. While the government introduced partial County Commission minutes showing that the three roads had been identified during discussions of funding for paving, the DPW witness had no idea whether the county contracted the work or spent money to pave the three Satilla Shores streets. (Doc 250-Pg 185-88, GX106)

The county expressly rejected the dedication of the streets of Satilla Shores, and the government presented no evidence to countermand that express rejection. It is not enough that the "streets were in working order," as the panel held. *Bryan*, 159 F.4th at 1292. The Court should hear this issue en banc to avoid making federal common law on a state law issue.

## CONCLUSION

The Court should rehear both issues en banc. In doing so, it should reject treating automobiles as *per se* instrumentalities of interstate commerce, consider state law in the providing and administering analysis, and reverse McMichael's convictions.

Respectfully submitted this 2nd day of January, 2026.

<u>/s/ Amy Lee Copeland</u>
Amy Lee Copeland
Georgia Bar No. 186730
Attorney for Appellant

## CERTIFICATE OF COMPLIANCE AND SERVICE

I certify that this petition complies with Fed. R. App. P. 32(a)(5), (6) because it has been prepared in Century Schoolbook 14-point, a proportionally spaced typeface, using Microsoft Word Office 365.

This petition complies with Fed. R. App. P. 40(d)(3)(A) and 11th Cir. R. 40-3 because the applicable portions of the petition contain 3,883 words.

On this date, I filed this petition using the Court's CM/ECF filing portal, which served all counsel of record.

This 2nd day of January, 2026.

<u>/s/ Amy Lee Copeland</u>
Amy Lee Copeland
Georgia Bar No. 186730
Attorney for Appellant