No. 22-12792

# In the United States Court of Appeals for the Eleventh Circuit

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

WILLIAM BRYAN, GREGORY MCMICHAEL, TRAVIS MCMICHAEL,
*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the Southern District of Georgia, Brunswick Division
Case No. 2:21-cr-22, Hon. Lisa Godbey Wood

---

## *AMICUS CURIAE* BRIEF OF NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS IN SUPPORT OF PETITIONS FOR REHEARING *EN BANC*

---

Adeel Bashir
 *Eleventh Circuit Vice Chair*
 *NACDL Amicus Curiae Committee*
400 N. Tampa Street, Suite 2660
Tampa, FL 33602
(703) 835-3929
adeel_bashir@fd.org

*Counsel for amicus curiae*

Thomas A. Burns
BURNS, P.A.
301 W. Platt Street, Suite 137
Tampa, FL 33606
(813) 642-6350
tburns@burnslawpa.com

*Counsel for amicus curiae*

*United States v. Bryan*, No. 22-12792

## CERTIFICATE OF INTERESTED PERSONS <br> AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rules 26.1-1 and 26.1-3, the following is an alphabetical list of the trial judges, attorneys, persons, and firms with any known interest in the outcome of this case.

1. Arbery, Ahmaud – Victim;

2. Balbo, Attilio Joseph (of Balbo & Gregg, Attorneys at Law, PC in Richmond Hill, Georgia) – Counsel for Defendant-Appellant Gregory McMichael;

3. Bashir, Adeel – Eleventh Circuit Vice Chair of NACDL *Amicus Curiae* Committee in Tampa, Florida;

4. Bernstein, Barbara "Bobbi" – Assistant United States Attorney, Deputy Chief, Southern District of Georgia;

5. Braniff, Andrew – Attorney, Department of Justice, Civil Rights Division, Acting Chief, Appellate Section;

6. Bryan, William "Roddie" – Defendant-Appellant;

7. Burns, Thomas A. (of Burns, P.A. in Tampa, Florida) – Appellate counsel for *amicus curiae* National Association of Criminal Defense Lawyers;

8. Cheesbro, Hon. Benjamin W. – United States Magistrate Judge;

9. Copeland, Amy Lee (of Rouse + Copeland LLC in Savannah, Georgia) – Counsel for Travis McMichael;

10. Heap, Margaret "Meg" – United States Attorney, Southern District of Georgia;

11. Levine, Brant – Attorney, Department of Justice, Civil Rights Division, Appellate Section;

*United States v. Bryan*, No. 22-12792

12.     Lyons, Tara M. – Former Acting United States Attorney, Southern District of Georgia;

13.     McMichael, Gregory – Defendant-Appellant;

14.     McMichael, Travis Perras – Defendant-Appellant; and

15.     Wood, Hon. Lisa Godbey – United States District Judge.

No publicly traded company or corporation has an interest in the outcome of this appeal.

January 6, 2026                              /s/ Thomas Burns
                                            Thomas A. Burns

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS.....................................C-1

TABLE OF CITATIONS ............................................................. ii

STATEMENT OF COUNSEL................................................... v

INTEREST OF *AMICUS CURIAE* ......................................... 1

ARGUMENT AND CITATIONS OF AUTHORITY................................. 1

I.    *Lopez* and *Morrison* establish the Commerce Clause's limits on Congress' power to regulate automobiles as a *per se* instrumentality of interstate commerce.................................... 3

II.   The majority's *per se* rule defies precedent and logic..................... 7

III. The *per se* rule federalizes everyday American life...................... 12

IV. Rehearing *en banc* would preserve the adversarial process ......... 14

CONCLUSION ...................................................... 15

CERTIFICATE OF COMPLIANCE ....................................... 16

CERTIFICATE OF SERVICE ............................................... 17

## TABLE OF CITATIONS

**Cases**                                                          **Page(s)**

*Buck v. Kuykendall,*
    267 U.S. 307 (1925) ................................................................. 11

*Caminetti v. U.S.,*
    242 U.S. 470 (1917) ................................................................. 12

*Cohens v. Virginia,*
    19 U.S. (6 Wheat.) 264 (1821) ................................................. 3

*Garcia v. Vanguard Car Rental USA, Inc.,*
    540 F.3d 1242 (11th Cir. 2008) ............................... v, 2, 7, 13

*Gibbons v. Ogden,*
    22 U.S. (9 Wheat.) 1 (1824) ..................................................... 4

*South Dakota v. Dole,*
    483 U.S. 203 (1987) ................................................................. 11

*Transamerican Freight Lines, Inc. v. Brada Miller Freight Sys., Inc.,*
    423 U.S. 28 (1975) ................................................................... 11

*U.S. v. Ballinger,*
    395 F.3d 1218 (11th Cir. 2005) *(en banc)* ................................ v, 2, 7, 8

*U.S. v. Bishop,* 66 F.3d 569 (3d Cir. 1995) ....................................... 11, 14

*U.S. v. Bryan,*
    159 F.4th 1274 (11th Cir. 2025) ................................... 9, 10, 14

*U.S. v. Campbell,*
    26 F.4th 860 (11th Cir. 2022) *(en banc)* ............................... 14

*U.S. v. Chavarria,*
    140 F.4th 1257 (10th Cir. 2025) ................................... 3, 9, 13

*U.S. v. Comstock,*
    560 U.S. 126 (2010) ................................................................. 3

*U.S. v. Lopez,*
    514 U.S. 549 (1995) ........................................... v, 4, 5, 6, 12

*U.S. v. McHenry,*
    97 F.3d 125 (6th Cir. 1996) .................................................. 14

*U.S. v. Morrison,*
    529 U.S. 598 (2000) ................................................... v, 4, 6

*U.S. v. Protho,*
    41 F.4th 812 (7th Cir. 2022) ................................................. 3

*U.S. v. Windham,*
    53 F.4th 1006 (6th Cir. 2022) ............................................... 3

## Constitutional provisions        Page(s)

U.S. Const. art. I, § 8, cl. 3 ....................................................... 5

## Statutes        Page(s)

18 U.S.C. § 242 .......................................................................... 4

18 U.S.C. § 1201 ................................................................. 4, 8, 14

18 U.S.C. § 2312 ........................................................................ 4

23 U.S.C. § 154 ......................................................................... 11

49 U.S.C. §§ 13101–14916 ........................................................ 11

Interstate Commerce Act of 1887, 24 Stat. 379 ....................... 11

Motor Carrier Act of 1935, 49 Stat. 543 ................................. 11

**Rules and regulations**                                    **Page(s)**

49 C.F.R. §§ 300–399 .................................................................. 11


**Other authorities**                                        **Page(s)**

Fed. Highway Admin., *Summary of Travel Trends: 2022 National
    Household Travel Survey* (2024) ........................................... 9

U.S. Dep't of Energy, *Fact of the Week #1332: Daily Vehicle Miles
    Traveled Varies by Number of Household Vehicles* (Mar. 4, 2024) ... 10

C.A. Doc. 73, *U.S. v. Williams*, No. 22-13469 (11th Cir.) ......................... 4

C.A. Doc. 96, *U.S. v. Williams*, No. 22-13469 (11th Cir.) ...................... 13

C.A. Doc. 111, *U.S. v. Williams*, No. 22-13469 (11th Cir.) .............. 11, 14

## STATEMENT OF COUNSEL

We express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decision(s) of the Supreme Court of the United States or the precedents of this circuit and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court: *U.S. v. Morrison*, 529 U.S. 598 (2000); *U.S. v. Lopez*, 514 U.S. 549 (1995); *Garcia v. Vanguard Car Rental USA, Inc.*, 540 F.3d 1242 (11th Cir. 2008); *U.S. v. Ballinger*, 395 F.3d 1218 (11th Cir. 2005) (*en banc*).

We express a belief, based on a reasoned and studied professional judgment, that this appeal involves one or more questions of exceptional importance: whether automobiles are *per se* instrumentalities of interstate commerce within the meaning of the Commerce Clause.

January 7, 2026                              /s/ Thomas Burns_____
                                             Thomas A. Burns

                                             /s/ Adeel Bashir_____
                                             Adeel Bashir

v

## INTEREST OF *AMICUS CURIAE*[1]

The National Association of Criminal Defense Lawyers ("NACDL") is a nonprofit professional bar association founded in 1958, with approximately 40,000 members including private criminal defense lawyers, public defenders, military defense counsel, law professors, and judges. NACDL is dedicated to advancing the proper, efficient, and just administration of justice and regularly files *amicus* briefs in cases presenting issues of broad importance to criminal justice.

## ARGUMENT AND CITATIONS OF AUTHORITY

Three decades ago, Justice Thomas prophesied that taking the Commerce Clause "to its logical extreme" would vest Congress with a general police power over "all aspects of American life." *U.S. v. Lopez*, 514 U.S. 549, 584 (1995) (Thomas, J., concurring). Ignoring his prescient warning, the majority's hubris cracks that Pandora's box wide open. The Court should grant rehearing *en banc* to close it.

Under the majority's rule, every automobile is an instrumentality of interstate commerce—always, regardless of use. A pickup truck that

---

[1] No person or entity other than *amicus*, its members, or its counsel authored this brief, in whole or in part, or made a monetary contribution to this brief's preparation or submission. *Amicus* timely notified the parties of its intent to file its brief, and all parties consented.

never leaves a residential neighborhood. A sedan driven three blocks to a local park. A car sitting in a driveway. All instrumentalities. All under the dominion of Congress' commerce power.

The consequences are staggering. A person drives to a house party and gets into a fistfight; a couple drives to pickleball and commits courtside domestic assault; a citizen drives to a political protest and engages in disorderly conduct. The vehicle never crosses a state line. The conduct has no connection to commerce. But the jurisdictional element is satisfied in each case because a car was present. And the Necessary and Proper Clause would authorize Congress to federalize driver licensing, traffic laws, and virtually any activity involving a car.

That rule has no limiting principle. It conflicts with *Lopez*, which requires case-by-case inquiry into whether regulated conduct implicates interstate commerce. It also conflicts with *Garcia v. Vanguard Car Rental USA, Inc.*, 540 F.3d 1242 (11th Cir. 2008), which declined to treat automobiles as categorical instrumentalities. And it cannot be reconciled with *U.S. v. Ballinger*, 395 F.3d 1218 (11th Cir. 2005) (*en banc*), which defined instrumentalities as things "moving in commerce."

The majority's decision also deepens a circuit split, inviting Supreme Court review. *Compare U.S. v. Chavarria*, 140 F.4th 1257, 1265 (10th Cir. 2025) (motor vehicles "are not *per se* instrumentalities of interstate commerce"), *with U.S. v. Windham*, 53 F.4th 1006, 1013 (6th Cir. 2022) ("cars and phones are instrumentalities of interstate commerce"), *and U.S. v. Protho*, 41 F.4th 812, 828–29 (7th Cir. 2022) ("automobiles" are *per se* "instrumentalities of interstate commerce"). *En banc* review is therefore warranted both to resolve the intracircuit tension between the majority's decision and *Garcia* and to ensure this Court's analysis is complete and correct, restoring the constitutional limits demanded by precedent and Our Federalism.

I.  ***Lopez* and *Morrison* establish the Commerce Clause's limits on Congress' power to regulate automobiles as a *per se* instrumentality of interstate commerce**

The Commerce Clause authorizes Congress "[t]o regulate Commerce … among the several States." U.S. Const. art. I, § 8, cl. 3. It doesn't confer general police powers to "punish felonies generally." *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 428 (1821). Rather, general police powers remain with the States. *U.S. v. Comstock*, 560 U.S. 126, 148 (2010).

At the founding, commerce was understood to consist of "selling, buying, and bartering, as well as transporting for these purposes." *Lopez*, 514 U.S. at 585 (Thomas, J., concurring). Thus, courts always understood the Commerce Clause to exclude intrastate activity. *See Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 194–95 (1824). Early federal criminal statutes reflected this understanding: the Mann Act (18 U.S.C. § 2421), Dyer Act (18 U.S.C. § 2312), and Lindbergh Law (18 U.S.C. § 1201) each required an *actus reus* of interstate transportation—actually crossing state lines. *See* C.A. Doc. 73 at 28–38, *U.S. v. Williams*, No. 22-13469 (11th Cir.) (summarizing history of commerce-based criminal laws).

Between the late nineteenth and mid-twentieth centuries, the Supreme Court expanded Congress' commerce authority to address railroad monopolies and the Great Depression. *See Lopez*, 514 U.S. at 553–56. Even so, that expansion still targeted economic activity. *See U.S. v. Morrison*, 529 U.S. 598, 614–19 (2000).

*Lopez* articulated the modern understanding of that authority, emphasizing that even at its zenith, the Commerce Clause "withhold[s] from Congress a plenary police power that would authorize enactment of

every type of legislation." *Id.* at 566. *Lopez* accordingly distilled Congress'
commerce authority into three discrete categories:

*First*, Congress "may regulate the use of the channels of interstate
commerce"—highways, waterways, and airways. *Id.* at 558. *Second*,
"Congress is empowered to regulate and protect the instrumentalities of
interstate commerce, or persons or things in interstate commerce, even
though the threat may come only from intrastate activities." *Id. Third*,
Congress may regulate "activities having a substantial relation to
interstate commerce, *i.e.*, those activities that substantially affect
interstate commerce." *Id.* at 558–59.

The majority plops automobiles into the second category—
instrumentalities—and holds they qualify *categorically*, regardless of
actual use. But the second category doesn't sweep in every object
theoretically capable of crossing state lines. The instrumentalities
Congress may regulate are those actually connected to interstate
commerce: goods moving in the stream of commerce, commercial vehicles
transporting freight across state lines, equipment integral to interstate
transportation networks. The mere *capability* of interstate travel doesn't

transform local objects into instrumentalities of interstate commerce, *per se*.

*Lopez* itself confirms this principle. Even under the third category—the most expansive of Congress' commerce powers—the Court required a jurisdictional element to "ensure, through case-by-case inquiry, that the [regulated conduct] in question affects interstate commerce." *Id.* at 561. The Court warned: "if we were to accept the Government's arguments, we are hard pressed to posit any activity by an individual that Congress is without power to regulate." *Id.* at 564. *Morrison* reinforced this notion by striking down a statute that "contain[ed] no jurisdictional element" and targeted conduct that was "not, in any sense of the phrase, economic activity." 529 U.S. at 613.

The majority's *per se* rule eliminates that inquiry. If every automobile is always an instrumentality, the jurisdictional element is satisfied whenever a car is present, and the case-by-case analysis vanishes. That's not what *Lopez* or *Morrison* permits, and so it's not what the Commerce Clause authorizes.

## II.   The majority's *per se* rule defies precedent and logic

Beyond conflicting with *Lopez* and *Morrison*, this Court already rejected the majority's approach in *Garcia*, which declined to hold that automobiles are *per se* instrumentalities. 540 F.3d at 1249–50. *Garcia* cautioned that such a rule would give Congress "plenary power not only over the commercial rental car market, but over many aspects of automobile use," including "regulation of such quintessentially state law matters as traffic rules and licensing drivers." *Id.* at 1250.

The majority adopted the rule *Garcia* rejected without even acknowledging it. In doing so, it claimed alignment with *Ballinger*—which *Garcia* already distinguished. But that claim is flawed.

*Ballinger* defined "[i]nstrumentalities of interstate commerce" as "the people and things themselves moving in commerce." 395 F.3d at 1226. The phrase "moving in commerce" requires actual participation in interstate activity, not mere theoretical capability. *Ballinger* involved actual interstate conduct: "weeks of travel in a van … along interstate highways … and at least six separate interstate border crossings." *Id.* at 1228. The Court held that Congress may "punish a church arsonist who

uses the channels and instrumentalities of interstate commerce to commit his offenses." *Id.* at 1230. The operative word is "uses."

*Ballinger* declined to hold that automobiles are categorically instrumentalities. Rather, it held the van qualified because the defendant *used* it to cross state lines six times; thus, he "plainly used both channels and instrumentalities of commerce." *Id.* at 1235.

The pickup truck here bears little resemblance to Ballinger's van. It didn't travel interstate highways or cross state lines. Under *Ballinger*, it wasn't "moving in commerce" at all.

The statutory text reinforces this conclusion. It requires that the instrumentality be one "of interstate ... commerce." 18 U.S.C. § 1201(a)(1). The word "of" demands a connection—the instrumentality must bear some relationship to interstate commerce, not merely exist as an object capable of interstate travel. The majority's *per se* rule reads the word "of" out of the statute entirely. Under that rule, any automobile satisfies the jurisdictional element regardless whether it moved in commerce, crossed state lines, or bore any connection to interstate activity. That construction violates the cardinal principle that courts must give effect to every word Congress uses.

The majority buttressed its analysis by analogizing automobiles to trains and aircraft and asserting that a contrary rule would create a "strange mismatch" with interstate highways. 159 F.4th at 1296 n.15. But both arguments collapse.

Trains and aircraft are categorically different. Railroads are integrated interstate networks; a railcar exists within continuous interstate infrastructure by design. Aircraft operate in federally regulated airspace; even local flights use federal airways, federal airports, and federal traffic control. These modes are "used almost exclusively for the commercial transportation of people or goods—*i.e.*, interstate commerce." *Chavarria*, 140 F.4th at 1265–66. As Judge Calvert's dissent recognized, "the precise planning and careful coordination between the states required for air and rail traffic sets those modes of transportation apart as uniquely interstate." *Id.* at 1266.

Automobiles share none of these characteristics. Government statistics indicate the average trip length is about 13 miles. *See* Fed. Highway Admin., *Summary of Travel Trends: 2022 National Household Travel Survey (2024)* (Table 3-3, pp. 18–19). Drivers average modest mileage—about 27 miles daily on typical weekdays (Table 8-2, p. 55)—

and households' vehicles average around 50 miles daily in one-vehicle households and nearly 60 miles for the first vehicle in two-vehicle households. *See id.* at Table 8-2, p.55; *see also* U.S. Dep't of Energy, *Fact of the Week #1332: Daily Vehicle Miles Traveled Varies by Number of Household Vehicles* (Mar. 4, 2024). Together, these statistics indicate daily driving normally consists of local trips associated with routine activities such as commuting, shopping, and errands, rather than long-distance or out-of-state travel. The automobile is the quintessential instrument of *local* mobility. On a *categorical* basis, it's scarcely different from a horse, or a horse-drawn carriage, or a bicycle, or a motorcycle, or a scooter: "The Framers traveled to Philadelphia on horseback or by horse and carriage. Can it be imagined that in constructing the Commerce Clause they intended to regulate and punish horse stealing?" *U.S. v. Cortner*, 834 F. Supp. 242, 243 (M.D. Tenn. 1993).

As for the majority's putative "mismatch," 159 F.4th at 1296 n.15: interstate highways have always had a corresponding categorical instrumentality—commercial motor carriers engaged in interstate transportation. Congress and the old Interstate Commerce Commission have regulated these carriers since the late nineteenth century. *See*

10

Interstate Commerce Act of 1887, 24 Stat. 379; Motor Carrier Act of 1935, 49 Stat. 543; 49 U.S.C. §§ 13101–14916; 49 C.F.R. §§ 300–399; *see also Transamerican Freight Lines, Inc. v. Brada Miller Freight Sys., Inc.*, 423 U.S. 28, 36–38 (1975); *Buck v. Kuykendall*, 267 U.S. 307, 314–16 (1925). There's no mismatch, and the majority overlooked a century-old framework in incorrectly claiming one existed. *See* C.A. Doc. 111 at 19–24, *U.S. v. Williams*, No. 22-13469 (11th Cir.) (summarizing interstate-transportation framework).

Also, consider how the federal government actually regulates automobiles' manufacturing standards, supply chains, and emissions—all commercial activity in interstate markets. Conspicuously absent: speed limits. When Congress seeks to influence how fast Americans drive, *e.g.*, 23 U.S.C. § 154, it relies on conditional Spending Clause legislation, not the Commerce Clause. *Cf. South Dakota v. Dole*, 483 U.S. 203 (1987); *accord U.S. v. Bishop*, 66 F.3d 569, 599 n.20 (3d Cir. 1995) (Becker, J., dissenting). Strange detour if Congress thought it could regulate automobiles as instrumentalities all along.

11

## III.  The *per se* rule federalizes everyday American life

The majority's errors carry profound practical consequences, proving Justice Thomas's prescient warning true. *Lopez*, 514 U.S. at 584. That's because its unbending rule lets federal tentacles ensnare any activity involving automobiles.

A teenager's drive to a local dog park ends in a fistfight over a parking spot. A mother drives home from a cookout and beats her child. A parent drives to a school-board event where harsh words are exchanged and fisticuffs ensue. A college student takes a bus across campus with "debauchery" in mind. *See Caminetti v. U.S.*, 242 U.S. 470, 485–86 (1917). A shoplifter hides contraband under a parked car, which never moves and isn't used for transportation at all.

The majority's rule transforms each act into potential federal offenses for Congress to criminalize. Not because of any interstate connection. Not because of any impact on commerce. Rather, because a car was involved. That cannot be what the Founders intended.

Indeed, the majority's principle extends without limit. Any offense where an automobile somehow facilitated the defendant's or victim's presence—drug possession, assault, trespass, vandalism, burglary,

fraud—satisfies the jurisdictional element, even if the vehicle never left the neighborhood and the conduct had no connection to commerce. *See* C.A. Doc. 96 at 33–39, *U.S. v. Williams*, No. 22-13469 (11th Cir.) (government's contrary view overreaches).

Those consequences extend beyond criminal law. As *Garcia* warned, the Necessary and Proper Clause would amplify this authority "to effectuate its plenary power over automobiles including, presumably, regulation of such quintessentially state law matters as traffic rules and licensing drivers, under the banner of protecting the instrumentalities of commerce." 540 F.3d at 1250. *Chavarria* put it starkly: "Under the government's view," picnics, school trips, and family visits "may be federally regulated on the mere basis that they require use of a motor vehicle, no matter what that use is." 140 F.4th at 1266.

Alas, the majority offers no principle to forestall these results. If a pickup truck in Satilla Shores is an instrumentality of interstate commerce, so is every car in America. Thus, constitutional avoidance counsels against the *per se* rule. *U.S. v. Bass*, 404 U.S. 336, 349 (1972).

As Judge Calvert observed, the defendants' conduct involved "no interstate travel, no use of the interstate highway system, no exchange

13

of communications via phone or text message, and no use of the internet." *U.S. v. Bryan*, 159 F.4th 1274, 1299 (11th Cir. 2025) (Calvert, J., dissenting). Nor did she discern any indication that Congress, in enacting § 1201, had meant to treat automobiles as instrumentalities of interstate commerce. *Id.*

Thus, Judge Calvert articulated the proper case-by-case approach: look at the automobile's "specific use" and consider whether "that use was consistent with the text of the statute, Congress's intent, and the limitations on Congress's ability to regulate commerce." *Id.* at 1304; *accord U.S. v. McHenry*, 97 F.3d 125, 129–37 (6th Cir. 1996) (Batchelder, J., dissenting); *Bishop*, 66 F.3d at 590–603 (Becker, J., dissenting).

## IV.   Rehearing *en banc* would preserve the adversarial process

Also, the majority abandoned the party-presentation principle by supposedly resolving an unbriefed constitutional issue. *See* C.A. Doc. 111 at 13–22, *U.S. v. Williams*, No. 22-13469 (11th Cir.). Thus, orderly briefing during rehearing *en banc* would preserve the adversarial process. *See U.S. v. Campbell*, 26 F.4th 860, 888 (11th Cir. 2022) (*en banc*) (Wm. Pryor, C.J, concurring) (litigant "may properly raise alternative arguments … before the *en banc* court that it failed to raise before the panel").

## <u>CONCLUSION</u>

Rehearing *en banc* should be granted.

Respectfully submitted,

/s/ Adeel Bashir                          /s/ Thomas Burns

Adeel Bashir                              Thomas A. Burns
 *Eleventh Circuit Vice Chair*            BURNS, P.A.
 *NACDL Amicus Curiae Committee* 301 West Platt Street, Suite 137
400 N. Tampa Street, Suite 2660           Tampa, FL 33606
Tampa, FL 33602                           (813) 642-6350
(703) 835-3929                            tburns@burnslawpa.com
adeel_bashir@fd.org

                                          *Counsel for amicus curiae*

*Counsel for amicus curiae*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with Federal Rule of Appellate Procedure 32(a)(7)(B)'s type-volume requirement. As determined by Microsoft Word 2010's word-count function, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and 11th Circuit Rule 32-4, this brief contains 2,600 words.

2.      This brief further complies with Federal Rule of Appellate Procedure 32(a)(5)'s typeface requirements and with Federal Rule of Appellate Procedure 32(a)(6)'s type-style requirements. Its text has been prepared in a proportionally spaced serif typeface in roman style using Microsoft Word 2010's 14-point Century Schoolbook font.

January 6, 2026                    /s/ Thomas Burns
                                   Thomas A. Burns

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I filed the original of the foregoing brief with the Clerk of Court via CM/ECF on January 6, 2026, to:

> David J. Smith, Clerk of Court
> U.S. COURT OF APPEALS FOR THE
>    ELEVENTH CIRCUIT
> 56 Forsyth Street N.W.
> Atlanta, GA 30303

I FURTHER CERTIFY that I served a true and correct copy of the foregoing brief via CM/ECF on January 6, 2026, to:

> Amy Lee Copeland
> J. Pete Theodocian
> A.J. Balbo
> Andrew Braniff

January 6, 2026                    /s/ Thomas Burns
                                    Thomas A. Burns

## ADDENDUM
### (excerpt of prosecutor's oral argument)

MR. LEVINE: And although the defendants didn't bring it up now, I will address briefly the Commerce Clause issues that they addressed in their brief. And on that point I would say that—that this is simply a sufficiency challenge—that *the defendants did not raise an as-applied or constitutional challenge*. So that means all this Court needs to decide in this particular case: did the defendants use an instrumentality of interstate commerce to commit the crime.

And here, there is no dispute that the defendants drove their car. Without their use of the car, the kidnapping offense could never have taken place. And as this Court stated *en banc* in *Ballinger*, Congress may prohibit harmful uses of instrumentalities of interstate commerce. And that's what we have here: the *en banc* Court said in *Ballinger*, it says that's true even if the harm flows outside the flow of commerce, even if the harm is purely local in nature.

And although this Court has not addressed that exact issue, the Sixth and Seventh Circuits recently have: the Sixth Circuit in *Wyndham* and the Seventh Circuit in *Protho* have held that intrastate use of a car to commit a kidnapping satisfies both the statute and the Constitution.

JUDGE BRANCH: So in our *Garcia* case, I know you're well aware, we declined to find that cars—or expressed some hesitation over finding that cars are *per se* instrumentalities of interstate commerce. Do we need to do that here? We have a car I think that was at least manufactured out of state, so are we going to have to wrestle with that issue here?

MR. LEVINE: *You don't need to wrestle with that issue here.* And if I understand the concern correctly in *Garcia*, it wasn't so much "are cars instrumentalities of interstate commerce" because every court to decide that has held "yes." I think what *Garcia* was concerned about are the effects of that:

does that mean that Congress can regulate anything and everything related to cars? And *Garcia* involved a regulatory scheme. It was a tort reform statute. So that's a civil case, so I think you don't need to grapple with that here. Here we have a criminal case, a kidnapping. So kidnapping is clearly a harmful use of an instrumentality of interstate commerce. This falls in the heartland of what Congress can regulate here. So *Garcia* would not need to apply here or stop this Court from rejecting their sufficiency challenge.

JUDGE CALVERT: But doesn't that mean that every kidnapping could be a federal crime? When we look at the facts that were present here?

MR. LEVINE: It could be if—*every kidnapping could be a federal crime if a car was used in furtherance of that crime.*

JUDGE CALVERT: And here, they weren't driving on an Interstate, weren't trying to—we have no evidence that they were transporting Mr. Arbery somewhere outside of, you know, even the Satilla Shores neighborhood. I mean, isn't this kind of a bit of a stretch to say that this falls within the statute of a federal crime?

MR. LEVINE: It's not a stretch. And I want to pick up on what you said about the statute. You know, the statute, the jurisdictional hook of the kidnapping statute, talks about an offender traveling in interstate commerce or using an instrumentality of interstate commerce. So those two words, "in" versus "of," shows Congress' intent that for a car or an instrumentality of interstate commerce, it can be intrastate, it doesn't have to be interstate.

And this is not going too far because instrumentalities of interstate commerce by their very nature can spread harm. Or as the Supreme Court has said, we don't have to wait for harm to spread between States because cars transport people between States, that Congress can regulate them even if the harm occurs within a State.

19

And this Court has dealt with a similar issue in the *Evans* case with a cell phone, even though there was no evidence of a cell phone being connected to interstate commerce. That this Court held it didn't matter because it is an instrumentality of interstate commerce, that is sufficient. So because there's an instrumentality of interstate commerce, and here, cars, as other courts have said, including in *Protho* and *Wyndham*, where the cars were driven also just intrastate, that is sufficient.

Oral Argument Audio 22:41–26:41, *United States v. Bryan*, No. 22-12792

(11th Cir.) (emphases added), *at* https://tinyurl.com/bdfjbzcx.